**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH A. LiCAUSI, | : | |
| Plaintiff | : | NO. |
| | : | |
| vs. | : | |
| | : | **JURY TRIAL DEMANDED** |
| ALLENTOWN SCHOOL DISTRICT, | : | |
| LUCRETIA BROWN, DARIA CUSTER, | : | |
| RALPH LOVELIDGE, ELIZABETH KELLY, | : | |
| KRISTIN KRUGER, SERENA EDWARDS, | : | |
| THOMAS PARKER, ANTHONY PIDGEON | : | |
| and DAVID HAHN, | : | |
| Defendants | : | |

## COMPLAINT

### JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and

1343(1), (3) and (4). This is an action for damages and/or injunctive relief authorized, arising

under and instituted under 42 U.S.C.A. 2000(e)-5(f), 28 U.S.C.A. 1343(1)(3)(4), 42 U.S.C.A.

1983, the First and Fourteenth Amendments to the Constitution of the United States. The

jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights

secured by 42U.S.C.A.2000e *et seq* providing for injunctive and other relief against

discrimination in employment. State claims are brought pursuant to this Honorable Court's

supplemental jurisdiction under 28 U.S.C. _ 1367 (a).

2.      All conditions precedent to jurisdiction under 42 U.S.C.A. 2000-e5(f)(3)

have occurred or been complied with.

3.     Venue is appropriate in the Eastern District of Pennsylvania. Plaintiff resides and the Defendants conduct business in this District and the causes of action arise out of events which took place in this District.

## PARTIES

4.     Plaintiff Joseph A. LiCausi (hereinafter "Plaintiff") is an adult individual residing at 3721 Allen Street, (Apt. #4), Allentown, Lehigh County, Pennsylvania 18104.

5.     Defendant Allentown School District (hereinafter "Defendant School District") is a public entity authorized and existing under the laws of the Commonwealth of Pennsylvania with its principle place of business located at 31 South Penn Street, Allentown, Lehigh County, Pennsylvania 18102 and at all times relevant to the within action, acted by and through its supervisory/management level employees, under color of state law.

6.     Lucretia Brown (hereinafter "Defendant Brown") is an adult individual, who, at all times relevant to the within action, served as the District Equity Coordinator for the Defendant School District and whose address is 31 South Penn Street, Allentown, Lehigh County, Pennsylvania l8l05.

7.     Daria Custer (hereinafter "Defendant Custer") is an adult individual, who, at all times relevant to the within action, served as Principal of the Harrison-Morton Middle School (hereinafter "Harrison-Morton").

8.     Ralph Lovelidge (hereinafter "Defendant Lovelidge") is an adult individual, who, at all times relevant to the within action, served as the Defendant School District's Executive Director of Secondary Education and whose address is 31 South Penn Street,

Allentown, Lehigh County, Pennsylvania l8l05.

9.      Elizabeth Kelly (hereinafter "Defendant Kelly") is an adult individual, who, at all times relevant to the within action, served as  Interim Director of Human Resources for the Allentown School District and whose address is 31 South Penn Street, Allentown, Lehigh County, Pennsylvania l8l02.

10.      Kristin Kruger (hereinafter "Defendant Kruger") is an adult individual, who, at all times relevant to the within action, served as Assistant Superintendent of Schools for the Allentown School District and whose address is 31 South Penn Street, Allentown, Lehigh County, Pennsylvania 18102.

11.      Serena Edwards (hereinafter "Defendant Edwards") is an adult individual, who, at all times relevant to the within action, served as Executive Director of Human Resources for the Allentown School District and whose address is 31 South Penn Street, Allentown, Lehigh County, Pennsylvania l8l02.

12.      Thomas Parker (hereinafter "Defendant Parker") is an adult individual, who, at all times relevant to the within action, served as Superintendent for the Allentown School District and whose address is 31 South Penn Street, Allentown, Lehigh County, Pennsylvania l8l02.

13.      Anthony Pidgeon (hereinafter "Defendant Pidgeon") is an adult individual, who, at all times relevant to the within action, served as the Director of Human Resources for the Allentown School District and whose address is 31 South Penn Street, Allentown, Lehigh County, Pennsylvania 18102.

14.    David Hahn (hereinafter "Defendant Hahn") is an adult individual, who, at all times relevant to the within action, served as Principal of the Union Terrace Elementary School, whose address is 1939 Union Street, Allentown, Lehigh County, Pennsylvania 18104.

15.    At all times relevant to the within action, Defendants Brown, Custer, Lovelidge, Kelly, Kruger, Edwards, Parker, Pidgeon and Hahn were state actors, acting under color of law and  supervisory/management level employees of Defendant School District, acting within the scope of their employment and under the direct control of Defendant School District.

## FACTS GIVING RISE TO CAUSE OF ACTION

16.    Plaintiff began his career as a teacher for the Defendant School District on or about August, 2001.

17.    As a result of the performance of his job responsibilities Plaintiff received stellar performance evaluations.

18.    On April 1, 2011, Plaintiff was promoted to the position of Assistant Principal at William Allen High School, 106 North 17th Street, Allentown, Lehigh County, Pennsylvania 18102 (hereinafter "William Allen High School").

19.    In November, 2013, Plaintiff was given the position of Assistant Principal at Harrison-Morton Middle School (hereinafter "Harrison-Morton"), Second and Turner Streets, Allentown, Lehigh County, Pennsylvania.

20.    During his career as a teacher, educator and supervisor, prior to August, 2016, Plaintiff was never involved in any incidents, problems or disciplinary actions involving his interaction with students, their parents, other teachers, supervisors or administrators within the Defendant School District.

21.    During his career as a teacher, educator and supervisor, prior to August, 2016, Plaintiff earned a stellar reputation for treating all teachers, students and parents fairly and respectfully, regardless of race, color or national origin.

**Defendants' Conduct - Public Concern - Race**

22.    In August, 2016, Defendant School District, by and through Defendant Custer, hired Heather Williams (hereinafter "Ms. Williams") for a teaching position at Harrison-Morton.

23.    Ms. Williams race is African-American and her color is black.

24.    From the outset of her employment, Ms. Williams' displayed animosity and a hostile and discriminatory attitude against students, other teachers and Plaintiff, due to their race and color.

25.    From the outset of her employment, Ms. Williams displayed an intolerant, antagonistic, verbally abusive attitude and was hostile and physically threatening to students whose race was Caucasian or Hispanic and whose color was white or brown.

26.    During the first week of her employment at Harrison-Morton, Ms. Williams physically assaulted a student whose race was Caucasian and whose color was white.

27.    Plaintiff, pursuant to his duties and responsibilities as an Assistant Principal, was made aware of Ms. Williams' inappropriate conduct.

28.    At all times during the period Plaintiff supervised Ms. Williams, he welcomed her comments and opinions and treated her with respect as he had treated all staff members.

29.    Pursuant to the duties and responsibilities of his position, Plaintiff met and

spoke with Ms. Williams and counseled her concerning her inappropriate and hostile attitude and treatment of certain students.

30.    At no time did Plaintiff treat Ms. Williams in a disrespectful and inappropriate way nor did he harass her in any manner.

31.    Plaintiff's counseling of Ms. Williams never involved racially based comments or criticisms nor did he ever utter a racial epithet or racially offensive comments while interacting with Ms. Williams.

32.    Plaintiff's supervision of Ms. Williams concluded on October 13, 2016, at which time Defendant Custer re-assigned Ms. Williams' supervision to Assistant Principal Donna Keeney (hereinafter "Ms. Keeney").

33.    After re-assigning Ms. Williams' supervision to Ms. Keeney, Defendant Custer ordered Plaintiff to have absolutely no contact or interaction with Ms. Williams.

34.    From October 13, 2016 through March 26, 2017, Plaintiff strictly obeyed Defendant Custer's directive and had no contact or interaction with Ms. Williams.

35.    From October 13, 2016 through March 26, 2017, Ms. Williams filed no complaints or grievances alleging any wrongful conduct by Plaintiff.

**Plaintiff's Citizen's Speech - Racially Hostile Environment**

36.    During the period from October, 2016 through March, 2017, Plaintiff complained to other supervisors, teachers, friends, parents, students and residents of the City of Allentown (hereinafter "the public") that the Defendant School District, by and through Defendant Brown and its other supervisory/management level employees, had become a racially hostile environment for teachers, parents and students whose race was Caucasian or Hispanic and

whose color was white or brown.

37.    Plaintiff, in speaking with the public, openly criticized the manner in which Defendant School District, by and through it supervisory/management level employees, including Defendant Brown, had catered to Ms. Williams, afforded her special treatment and permitted her to be physically and mentally abusive to students.

38.    Plaintiff openly criticized the Defendants' disparately favorable treatment to Ms. Williams, as opposed to other teachers whose race was Caucasian or Hispanic and whose color was white or brown.

39.    Plaintiff's above-described speech and criticism of Defendants was not made pursuant to his job duties and responsibilities as Assistant Principal and involved matters of concern to members of the public.

**Public Concern - Sexual Harassment Policy**

40.    In 2006 and 2009, Plaintiff and other parents and residents of the City of Allentown became aware that several students ages six (6) and seven (7) complained that they were sexually harassed at school and that Defendant School District failed to provide said students with adequate levels of protected secure procedures and policies.

41.    In 2009, an additional minor child came forth to complain that she had been the victim of sexual harassment.

42.    In 2009, the Department of Justice intervened on behalf of the minor children and made various determinations.

43.    The Department of Justice determined that sexual harassment occurred within Defendant School District on a minimum of five (5) separate occasions and that Defendant

School District was made aware of each incident immediately after it occurred.

44.    The Department of Justice determined that, despite receiving immediate notice of each incident of sexual harassment, Defendant School District failed or refused to take appropriate action.

45.    The Department of Justice further determined that in some instances Defendant School District took no action to prevent the harassment from re-occurring.

46.    The Department of Justice further determined that before and after each incident of sexual harassment, Defendant School District had failed or refused to adopt and implement adequate and effective sexual harassment policies and procedures.

47.    The Department of Justice further determined that had the Defendant School District  adopted, implemented and enforced adequate and effective anti-sexual harassment policies and procedures, as required by federal law, the incidents of sexual harassment against the minor students would have been prevented.

48.    Plaintiff became aware that in March, 2015, representatives of the Department of Justice questioned Defendant Brown about sexual harassment and assaults which were alleged to have taken place during the 2012 and 2014 calendar years.

49.    Department of Justice representatives further questioned Defendant Brown about the manner in which she was following, administering and enforcing the sexual harassment protocols for all students within the Defendant School District as previously implemented/mandated by the Department of Justice.

50.    Defendant Brown responded to the aforesaid inquiries from the Department of Justice by representing that she was in compliance with all protocols and mandates

previously established for students within the Defendant School District.

51.    Plaintiff spoke openly with the public and criticized and challenged Defendant Brown's representations to the Department of Justice that she was in strict compliance with the previously entered protocols and mandates concerning sexual harassment complaints within the Defendant School District.

52.    Plaintiff further complained that, contrary to her representations to the Department of Justice, Defendant Brown violated, ignored and/or refused to enforce the mandates set forth by the Department of Justice to protect all students within Defendant School District.

53.    Defendant School District's Code of Conduct/Anti-Sexual Harassment provisions in effect during the 2016-2019 calendar years defines sexual harassment and outlines proper notice and investigative procedures.

54.    Defendant Brown, as District Equity Coordinator, was responsible for monitoring student and staff compliance with Defendant School District's anti-harassment policies and procedures at all levels throughout the entire school district.

55.    Defendant Brown was responsible for notifying and educating the parents or guardians of students, including students who were involved in reported incidents, with the anti-harassment policies and procedures.

56.    Plaintiff observed Defendant Brown's failure to properly vet and investigate claims of sexual harassment within the Defendant School District.

57.    During the period from January, 2017 through March, 2017 Plaintiff complained to his supervisors about the ineffective and incompetent manner in which Defendant Brown supervised and implemented the Defendant School District's anti-sexual harassment

policies.

58.     Plaintiff complained to the public that the failure of Defendant Brown and Defendant School District to promulgate and adopt proper and adequate policies and to properly investigate and enforce said policies placed the students of Defendant School District at risk.

59.     Plaintiff spoke with the public about the confusion and ambiguities in the Defendant School District's anti-harassment policy as it was being administered by Defendant Brown.

60.     Plaintiff further complained to the public that Defendant Brown was intentionally defying or incompetently failing to administer and enforce the sexual harassment policy and to abide by the safety mandates of the Department of Justice.

61.     Plaintiff further asserted publicly that Defendant School District's confusing and inadequate sexual harassment policy as supervised and administered by Defendant Brown in violation of the mandates of the Department of Justice, would result in additional claims of sexual harassment.

62.     The vetting and investigation of sexual harassment claims at the Raub Middle School or within the Defendant School District's elementary, middle and high schools, were not part of Plaintiff's job responsibilities as an Assistant Principal at Harrison-Morton.

63.     Plaintiff's aforesaid speech was not pursuant to his job responsibilities and involved the safety of school district students and a matter of public concern.

64.     During the period from January, 2017 until March, 2017, Plaintiff continued to complain openly to the public about the ambiguities and confusion in the Defendant School District's anti-harassment policy as administered and supervised by Defendant Brown and

Defendant Brown's deliberate defiance of the mandates of the Department of Justice.

65.    Plaintiff repeated his fear that the actions of Defendant Brown would create a repeat of the incidents of sexual harassment within Defendant School District as occurred in 2006 and 2009, which resulted in the intervention of the Department of Justice.

**Defendants' Custom, Practice and Policy of Retaliation**

66.    At all times relevant to the within action, Defendant School District had a custom, practice and policy of retaliating against employees who exercised their right to free speech, as a citizen on matters of public concern.

67.    Defendant School District further had a custom, practice and policy of retaliating against employees to exercise their right to file grievances, petitions or appeals of disciplinary action taken by Defendant School District.

68.    Defendant School District further had a custom, practice and policy of retaliating against employees who filed complaints of discrimination with state and/or federal agencies.

69.    Defendant School District issued verbal reprimands, written reprimands, suspensions without pay, career damaging performance evaluations, denials of transfer requests and stripping of authority within committees to carry out/enforce its custom, practice and policy of retaliation.

70.    Defendant School District carried out/enforced its above-described customs, practices and policies of retaliation by and through its supervisory/management level employees, including Defendants herein.

71.    In March, 2017, Ms. Williams was issued a reprimand for her conduct as

-11-

a teacher within the classroom.

72.    Plaintiff had no role or part in the reprimand issued against Ms. Williams.

73.    On March 26, 2017, Ms. Williams filed a claim of racial discrimination which focused on Defendant Custer and included Plaintiff.

74.    Ms. Williams' racial discrimination claim against Plaintiff contained no allegation of specific conduct or statements by Plaintiff which formed the basis of her accusation.

**Conspiracy - March 26, 2017**

75.    On or after March 26, 2017, Defendants Brown and Custer entered into an agreement, understanding, plot, plan and conspiracy to retaliate against and punish Plaintiff for his above-described speech addressing: 1) Defendant Brown's failure to properly supervise or implement the anti-harassment policy; and 2) Defendant School District's becoming a racially hostile environment for students and teachers whose race was Caucasian or Hispanic and whose color was white or brown.

76.    The aforesaid conspiracy was entered into on March 26, 2017 or immediately thereafter and continues through the date of the filing of the within Complaint.

77.    On or about March 26, 2017, pursuant to the aforesaid conspiratorial agreement, Defendants Brown and Custer issued a formal reprimand to Plaintiff concerning Ms. Williams' complaint of racial discrimination.

78.    During the course of his employment Plaintiff recognized and was part of a pipeline of information between the assistant principals and principals of the two (2)  high schools, four (4) middle schools and elementary schools and the supervisory employees working in the Defendant School District's main office, including the above-named Defendants.

-12-

79.     The aforesaid reprimand contained false and damaging information and was disseminated by Defendant Custer through the pipeline including Harrison-Morton, the two (2) high schools, the middle and elementary schools and the supervisory employees working in Defendant School District's main office, including the above-named Defendants.

80.     Plaintiff had no contact with Ms. Williams during the period of October, 2016 through March, 2017 pursuant to the order and directive given to Plaintiff by Defendant Custer.

81.     Pursuant to the aforesaid conspiratorial agreement, Defendant Custer was not reprimanded nor disciplined for her directive to Plaintiff to avoid contact with Ms. Williams and Defendant Custer never interceded on Plaintiff's behalf in this regard.

82.     The aforesaid reprimand made no reference to Defendant Custer's above-described directive and determined that Plaintiff's having no job related contact with Ms. Williams after she was removed from Plaintiff's supervision amounted to "racial retaliation."

83.     The combined actions of Defendants Custer and Brown reprimanded Plaintiff for "racial retaliation" for Plaintiff's strictly obeying Defendant Custer's order to have no contact with Ms. Williams and placed Plaintiff at risk to be disciplined or reprimanded for disobeying a direct order in the event he had contact with Ms. Williams.

84.     Defendants retaliated against and  disciplined Plaintiff with the intent of tarnishing or damaging Plaintiff's reputation as an administrator, eliminating Plaintiff's ability to obtain suitable employment elsewhere and establishing a ground work to terminate Plaintiff or force his resignation.

85.     Plaintiff demanded from Defendants a name-clearing hearing in order to

-13-

address the false and damaging statements contained in the reprimand and placed in Plaintiff's professional-personal file.

86.     Plaintiff filed a petition and appeal in order to address and rebut the aforesaid reprimand and to clear his name.

87.     Defendants blocked Plaintiff's petition and appeal and refused to grant Plaintiff's name-clearing hearing.

**Plaintiff's Speech - May 12, 2017**

88.     On May 12, 2017, Plaintiff contacted Defendant School District's Solicitor to complain about the ambiguities and confusion in the anti-harassment policy and investigations as administered, supervised and enforced by Defendant Brown.

89.     Plaintiff advised the Solicitor's representative that other teachers and parents of students within Defendant School District were complaining to Plaintiff about problems and safety issues with the anti-harassment policy.

90.     Plaintiff further advised the Solicitor's representative that letters were being sent from Homeschool Administrators, on behalf of Defendant Brown, to the parents and/or guardians of alleged perpetrators and victims of harassment, without said letters having been first reviewed and/or vetted by Defendant Brown.

91.     Plaintiff's conversation with the Solicitor's representative was not pursuant to his job responsibilities and duties as Assistant Principal at Harrison-Morton.

**Conspiracy - Reprimand - May 17, 2017**

92.     On or about May 17, 2017, Defendant Lovelidge entered into an agreement, understanding, plot, plan and conspiracy with Defendants Custer and Brown to

retaliate against and punish Plaintiff for his above-described speech concerning safety issues created by Defendant Brown's failure to properly enforce the anti-harassment policy.

93.     The conspiratorial agreement entered into on May 17, 2017, furthered the conspiratorial agreement previously entered by Defendants Custer and Brown on or about March 26, 2017.

94.     On May 17, 2017, Plaintiff was called to a meeting with Defendants Custer and Lovelidge which was attended by Plaintiff's Act 93 representative.

95.     During the aforesaid meeting, Plaintiff repeated his complaints about the ineffective, incompetent and dangerous manner in which Defendant Brown was administering the Defendant School District's sexual harassment policies, investigations and dispositions and defying and/or refusing to abide by the mandates of the Department Justice.

96.     As a direct retaliation for Plaintiff's speech with the Solicitor's representative, Defendants Lovelidge, Custer and Brown, on behalf of Defendant School District, issued a verbal reprimand to Plaintiff.

97.     The aforesaid verbal reprimand was subsequently memorialized in writing and placed as a derogatory and damaging entry in Plaintiff's professional-personnel file.

98.     The aforesaid reprimand stated "your conduct is unprofessional because you showed a lack of consideration for the leadership structure within your school and the district."

99.     The aforesaid reprimand further warned "any failure on your part to comply with the aforementioned direction or any other standards or expectations of professional conduct pertaining to your role as an educator, will result in further disciplinary action, up to and

including termination, if warranted."

100.    Defendants' discipline of Plaintiff was an overt act in furtherance of the conspiracies previously entered into by Defendants and was a direct retaliation against Plaintiff for his speech as a citizen on a matter of public concern.

101.    Defendants' retaliation against Plaintiff was pursuant to its custom, practice and policy of retaliating against employees who exercise their right to free speech as a citizen on matters of public concern.

102.    Defendants' reprimand contained the above false and damaging information about Plaintiff and was disseminated by Defendant Custer through the above-described pipeline to principals and assistant principals at the high school, middle school and elementary school levels and to the supervisory/management level employees at Defendant School District's main office, including the above named Defendants.

103.    Plaintiff demanded from Defendants a name-clearing hearing in which to address and rebut the false and damaging statements  contained in the reprimand and placed in Plaintiff's professional-personnel file.

104.    Plaintiff filed a petition/appeal of Defendants' reprimand in order to clear his name and rebut the false and damaging statements contained in said reprimand.

105.    Defendants blocked Plaintiff's petition and appeal and refused to grant Plaintiff a name-clearing hearing.

**Plaintiff's Speech - May 12, 2017 through June 29, 2017**

106.    Plaintiff continued to speak out to the public, that Defendant School District had become a racially hostile environment for students and teachers whose race was

Caucasian or Hispanic and whose color was white or brown.

107.    Plaintiff further spoke out publicly against the disparately favorable treatment afforded by Defendant School District to Ms. Williams and Defendant Brown solely due to their race and color.

**Discipline - June 29, 2017**

108.    On June 29, 2017, Plaintiff was called to a meeting attended by Defendants Brown and Lovelidge and David Elcock, Director of Human Resources.

109.    At the aforesaid meeting, Defendant Brown issued a written reprimand to Plaintiff, accusing Plaintiff of having targeted Ms. Williams due to her race, during incidents which were alleged to have occurred from September 6, 2016 to October 11, 2016.

110.    The aforesaid reprimand failed to set forth any facts to support the allegation that Plaintiff had engaged in racial targeting of Ms. Williams from September 6, 2016 to October 11, 2016.

111.    The aforesaid reprimand was an overt act in furtherance of the conspiracies previously entered by Defendants and was a direct retaliation for Plaintiff's above-described speech and filing petitions/appeals of Defendants' discipline/reprimands.

112.    Defendants' reprimand accused Plaintiff of racial targeting, contained false and damaging information about Plaintiff and was disseminated by Defendant Custer through the aforesaid pipeline to the other principals, assistant principals and supervisory/management level employees within the Defendant School District, including the above-named Defendants.

113.    Plaintiff demanded from Defendants a name-clearing hearing in which to address and rebut the false and damaging statements contained in the reprimand and placed in

Plaintiff's professional-personnel file.

114.    Plaintiff filed a petition/appeal of Defendants' reprimand in order to clear

his name and rebut the false and damaging statements contained in said reprimand.

115.    Defendants blocked Plaintiff's petition and appeal and refused to grant

Plaintiff a name-clearing hearing.

**Conspiracy - July, 2017**

116.    On or about July, 2017, Defendant Kelly entered into an agreement,

understanding, plot, plan and conspiracy  conspiratorial with Defendants Lovelidge, Custer and

Brown to retaliate against Plaintiff for his above-described speech and filing of petitions,

grievances and appeals.

117.    During August, 2017, Plaintiff requested a conference with Deputy

Superintendent David Wildonger, in order to appeal his written reprimand from June 29, 2017.

118.    Defendant Kelly appeared at said meeting and warned Plaintiff to stop

speaking out about safety issues and other matters of public concern resulting from Defendant

Brown's conduct.

119.    During the meeting in August, 2017, Defendant Kelly warned Plaintiff not

to seek legal counsel concerning any discipline, reprimands or warnings administered by

Defendants and not to appeal any of Defendants' discipline, reprimands or warnings.

120.    During the meeting in August, 2017, Defendant Kelly, attempted to

intimidate and silence Plaintiff by reminding Plaintiff of Defendants' treatment of Jose Rosado,

Sr. (hereinafter "Mr. Rosado").

121.   Mr. Rosado, whose race was Hispanic and color was brown, was an administrator who had spoken out against and challenged policies of Defendant School District.

122.   Defendant Kelly further reminded Plaintiff that, as a direct result of Defendants' reprimanding and disciplining Mr. Rosado, he could not find suitable or comparable professional employment as an administrator outside of Defendant School District.

123.   Defendant Kelly warned Plaintiff that, if he continued to speak out on the above-described matters, he would face the same fate as Mr. Rosado.

124.   Defendant Kelly's statements were pursuant to the aforesaid conspiracy and in accordance with Defendant School District's custom, practice and policy of retaliating against employees who engage in speech as a citizen on matters of public concern and or filed petitions, grievances appeals and/or complaints of discrimination.

125.   In response to Defendant Kelly's warning to forego any appeals of the discipline imparted by Defendants, Plaintiff advised Defendant Kelly that he intended to fully pursue all appeals.

126.   Defendant Kelly responded that she would provide Plaintiff with an appeal form document.

127.   Defendant Kelly intentionally mislead Plaintiff concerning the existence of any appeal process or appeal "form".

128.   Defendant Kelly never provided Plaintiff with an appeal "form" nor was Plaintiff ever afforded appeal rights and/or an appeal.

**Discipline - July 27, 2017**

129.   On July 27, 2017, Defendant Custer issued Plaintiff a yearly evaluation

containing four (4) components stating "needs improvement."

130.    The aforesaid evaluation was unfair, unwarranted and a direct retaliation for Plaintiff's above-described speech and attempts to grieve, petition and/or appeal the improper discipline imparted to Plaintiff by Defendants.

131.    The aforesaid evaluation placed a "stain" and/or "black mark" on Plaintiff's otherwise immaculate work record and unfairly created an obstacle to Plaintiff's obtaining future promotions within Defendant School District or other school districts.

132.    The aforesaid evaluation was an overt act in furtherance of the conspiratorial agreements entered into by Defendants on or about March 26, 2017, May 17, 2017, June 29, 2017 and July, 2017.

133.    Defendants' reprimand contained false and damaging information about Plaintiff, accused Plaintiff of being less than adequate as an assistant principal and was disseminated by Defendant Custer through the aforesaid pipeline to the other principals, assistant principals and administrators within Defendant School District, including the above-named Defendants.

134.    Plaintiff demanded from Defendants a name-clearing hearing in which to address and rebut the false and damaging statements contained in the reprimand and placed in Plaintiff's professional-personnel file.

135.    Defendants blocked Plaintiff's petition and appeal and refused to grant Plaintiff a name-clearing hearing.

136.    On August 17, 2017, Plaintiff filed an appeal/grievance of the aforesaid unwarranted discipline and illegal written reprimand issued on June 29, 2017.

137.    In support of his appeal, Plaintiff accused Defendant Brown and Ms. Williams of being racist and of taking action against Plaintiff for racially impermissible reasons.

138.    Plaintiff's appeal of the reprimand issued on June 29, 2017 was granted, thereby clearing Plaintiff of any alleged wrongdoing involving Ms. Williams., however, in May, 2018, Defendants, without cause, wrongfully and vindictively re-issued a reprimand against the Plaintiff containing similar or identical language to the reprimand for which Plaintiff was exonerated.

**Plaintiff's Speech - Joseph Mercado**

139.    On or about October/November, 2017, Plaintiff learned that an Hispanic Special Education Facilitator named Joseph Mercado (hereinafter "Mr. Mercado"), who had an excellent teaching record within the Defendant School District, had accidentally and innocuously sent a personal email through his teacher/electronic mail.

140.    Plaintiff further learned that the Defendant School District had ordered Mr. Mercado to resign or be fired as a result of this innocent mistake.

141.    Plaintiff appeared at a proceeding at the Defendant School District's Administrative Office on behalf of Mr. Mercado, with the specific intent to "show support for an excellent employee."

142.    During his appearance at the Defendant School District's Administrative Office, Plaintiff openly supported Mr. Mercado and opposed and objected to the discriminatory manner in which Mr. Mercado was being treated by Defendant School District.

143.    On a regular, daily basis, Plaintiff spoke openly and complained to the public about Defendant School District's discriminatory treatment of Mr. Mercado.

144.    Plaintiff's speech in opposition to Defendants' discriminatory treatment of Mr. Mercado and other teachers and students, due to race, was not pursuant to his job duties and responsibilities as an assistant principal at Harrison Morton.

**Conspiracy - November, 2017**

145.    On or about November, 2017, Defendants Kruger and Edwards entered into an agreement, understanding, plot, plan and conspiracy with each other and Defendants Custer, Brown, Lovelidge and Kelly to retaliate against and punish Plaintiff for his above-described speech and filing of petitions, grievances and appeals.

146.    On November 14, 2017, Plaintiff received a letter/notice  from Defendant Kruger to appear in the office of Defendant Edwards on November 15, 2017, for a disciplinary hearing concerning an alleged violation of the collective bargaining process and a right to privacy.

147.    The meeting on November 15, 2017, was termed a "due process" meeting resulting from Plaintiff's speech and efforts on behalf of Mr. Mercado.

148.    On November 20, 2017, as a direct retaliation against Plaintiff for his speech on behalf of Mr. Mercado and in opposition to the discriminatory manner in which Defendant School District had forced Mr. Mercado's resignation, Defendant School District issued a written notification and directive subjecting Plaintiff to a three (3) day, unpaid suspension, to be served consecutively on or before December 15, 2017.

149.    The aforesaid written notification/directive contained false and damaging information and accusations against Plaintiff which were disseminated by Defendant Custer through the aforesaid pipeline to the principals, assistant principals and administrators working in Defendant School District's main office, including the above-named Defendants.

-22-

150.    The aforesaid discipline was intended to further tarnish/damage Plaintiff's reputation, eliminate his ability to obtain suitable employment elsewhere and/or lay the groundwork to force Plaintiff's resignation or terminate Plaintiff's employment.

151.    Plaintiff demanded from Defendants a name-clearing hearing to address and rebut the false and damaging statements contained in the letter/notice.

152.    Plaintiff, with the assistance of his Act 93 representative, attempted to file a timely appeal from the improper discipline imparted by Defendant School District on November 20, 2017, and to clear his name and rebut the false and damaging statements in the aforesaid letter/notice.

153.    Defendants blocked Plaintiff's petition and appeal and refused to grant Plaintiff a name-clearing hearing.

154.    Defendant School District, by and through Defendants Edwards, Kruger, Kelly and Custer, instructed Plaintiff that his only recourse was to file a "rebuttal letter" which would be added to his professional file.

155.    Defendants refused to allow, consider or act upon Plaintiff's attempt to appeal the discipline imparted on November 20, 2017 or to afford Plaintiff a name-clearing hearing or due process.

156.    Defendants improperly denied Plaintiff an opportunity to view his permanent file prior to his filing an appeal or placing a rebuttal letter in his file.

157.    The Defendants' refusing Plaintiff an opportunity to view his permanent professional file, denying Plaintiff's right to appeal and denying Plaintiff a name-clearing hearing were overt acts in furtherance of their above-described conspiratorial agreements.

**Plaintiff's Protected Activity November, 2017 through April 19, 2018**

158.    During the period from November, 2017 through April, 2018, Plaintiff made numerous written and in person attempts to obtain access to his permanent, professional-personnel file to enable him to file an appeal of his illegal, three (3) day unpaid suspension.

159.    Defendants wrongfully and illegally denied Plaintiff access to his permanent, professional-personnel file and precluded Plaintiff from fully perfecting an appeal.

160.    Plaintiff learned from individuals working with Officer Matt Geake (hereinafter "Officer Geake"), SRO, Raub Middle School and others that on or about November, 2016, Defendant Brown ordered an Assistant Principal to download a video from a student's phone displaying photographs/images of minor students engaged in sexual acts and to place the video on a thumb drive.

161.    Plaintiff further learned from individuals working with Officer Geake and others that Defendant Brown disseminated the photographs/images of minor students engaged in sexual acts to parents at the Raub Middle School, 102 South St. Cloud Street, Allentown, Lehigh County, Pennsylvania.

162.    Plaintiff further learned from individuals working with Officer Geake that he had notified his superiors at the Allentown Police Department about Defendant Brown's conduct relating to her displaying photographic images of minor children engaged in sexual acts to the parents at the Raub Middle School.

163.    Plaintiff complained openly to the public about the failure of the Allentown Police Department to investigate or take action against Defendant Brown for her displaying photographic images of minor children engaged in sexual acts to parents at the Raub Middle

School.

164.    Plaintiff repeatedly stated that Defendant Brown's aforesaid conduct should be referred to the Lehigh County District Attorney's Office for investigation and possible criminal prosecution.

165.    Plaintiff repeated his prior statements that the Defendant School District had become a racially hostile environment for teachers and students whose race was Caucasian or Hispanic and whose color was white or brown.

166.    Plaintiff spoke openly with the public and accused Defendants of having treated Mr. Mercado disparately less favorably than Defendant Brown and Ms. Williams, because Mr. Mercado's race is Hispanic and color is brown.

167.    Plaintiff spoke openly and contrasted Mr. Mercado's conduct, which, was a deminimus offense with Defendant Brown's conduct which constituted a possible felony.

168.    Plaintiff further contrasted Mr. Mercado's deminimus conduct with that of Ms. Williams, who had engaged in inappropriate classroom conduct and in physically assaultive behavior against students.

169.    Plaintiff spoke out against Defendants forcing Mr. Mercado's resignation for a deminimus offense, while taking no disciplinary action against Defendant Brown or Ms. Williams for their far more egregious conduct.

170.    Plaintiff complained that Defendants' forced resignation of Mr. Mercado had harmed specific students by depriving them of a gifted teacher.

171.    Plaintiff's statements in support of Mr. Mercado were not pursuant to his job classification or responsibilities.

172.    Plaintiff further accused Defendant School District of promoting Defendant Brown to the position of Assistant Superintendent, despite her having never worked as a classroom teacher or served as an administrator, solely because her race is African-American and color is black.

173.    Plaintiff further accused Defendant School District of engaging in unfair practices by hiring and promoting individuals to positions which they were professionally unqualified to assume or hold, solely because said individuals' race was African-American and color was black.

174.    Plaintiff further accused Defendant School District of treating him disparately less favorably than Defendant Brown and Ms. Williams, because his race is Caucasian and his color is white.

175.    Plaintiff openly announced his intention to file a charge/complaint of discrimination against Defendant School District with the Pennsylvania Human Relations Commission and the United States Equal Employment Opportunity Commission.

**Conspiracy - April 19, 2018 - Defendant Parker**

176.    On April 19, 2018, Plaintiff contacted Defendant Parker in order to complain that no action had been taken from August 17, 2017 through April 19, 2018, concerning Plaintiff's original appeal involving Ms. Williams.

177.    Plaintiff further requested a meeting with Defendant Parker to complain about Defendant School District's denying Plaintiff access to his professional-personnel file.

178.    Plaintiff warned Defendant Parker that Defendant School District was forcing him to seek legal representation in order to gain access to his professional-personnel file

-26-

and to assist him with his petitions, grievances and appeals and his filing claims of discrimination with the appropriate agencies.

179.     On April 19, 2018, after being contacted by Plaintiff, Defendant Parker entered into an agreement, understanding, plot, plan and conspiracy with Defendants Brown, Custer, Kelly, Kruger, Edwards and Loveledge to retaliate against Plaintiff for his above-described speech, petitions, grievances, and appeals and to deny Plaintiff access to his professional-personnel file.

180.     Defendant Parker precluded Plaintiff from filing or perfecting  a proper, comprehensive appeal of the improper, illegal and adverse employment actions taken against Plaintiff by Defendants.

181.     Defendant Parker precluded Plaintiff from having full access to his personnel file and limited, interfered with and precluded Plaintiff's ability to file a full and comprehensive claim of discrimination against Defendants with the Pennsylvania Human Relations Commission and the United States Equal Employment Opportunity Commission.

182.     Defendant Parker refused to personally assist Plaintiff and merely directed Plaintiff to contact the acting Human Resources Director within Defendant School District's Solicitor's Office.

183.     From April 19, 2018 to May 18, 2018, neither Defendant Parker nor any of the above-named Defendants afforded Plaintiff access to his professional-personnel file nor did they resolve his appeal filed August 17, 2017.

184.     Plaintiff further advised Defendant Parker that, on numerous occasions during the 2017 and 2018 calendar years, he had requested to be transferred out of Harrison-

Morton, however his requests were denied.

185.    Plaintiff requested that Defendant Parker authorize his transfer away from Harrison-Morton Middle School.

186.    Defendant Parker had the authority to vacate all prior disciplinary actions against Plaintiff, to cleanse Plaintiff's professional-personnel file and to provide Plaintiff full access to his file.

187.    Defendant Parker had the authority to facilitate Plaintiff's appeal of his three (3) day unpaid suspension resulting from his actions on behalf of Mr. Mercado.

188.    Defendant Parker further had the authority to grant Plaintiff's request to be transferred out of Harrison-Morton.

189.    Defendant Parker took no action on Plaintiff's behalf.

**Plaintiff's Filed Claims of Discrimination - May 18, 2018**

190.    On May 18, 2018, Plaintiff filed a charge/claim of discrimination against the Defendant School District with the Pennsylvania Human Relations Commission at Case Number 201704186 and  with the United States Equal Employment Opportunity Commission at Case Number 17F201860603 (hereinafter "Complaint").

191.    Plaintiff spoke openly with the public and advised that he had filed the Complaint with the state and federal agencies.

192.    In May, 2018, Defendant School District, by and through  its supervisory/ management level employees, were notified and or became aware that Plaintiff had filed the Complaint with both agencies.

193.    During the months of May and June, 2018, Plaintiff spoke openly with the

public about the facts supporting his state and federal charges/complaints.

194.    Plaintiff further accused  Ms. Williams, Defendants Brown, Parker and Edwards of being racist and harboring prejudice and animosity against teachers and students within the school district whose race was Caucasian or Hispanic and whose color was white or brown.

195.    Plaintiff further complained that Defendants Brown, Parker and Edwards had conspired against him because of his race and color.

196.    On or about April or May, 2018, Plaintiff applied for the open position of Principal at William Allen High School.

197.    Plaintiff was offered the same perfunctory interview as offered to any individual who applied for the position.

198.    On June 7, 2018, Immediately prior to his interview, Plaintiff was provided with a series of written questions which were to be addressed by the panel during the interview.

199.    Plaintiff was instructed to briefly review the questions and advise when he was prepared to answer said questions.

200.    During the interview process, Plaintiff was questioned by a member of the interviewing panel whose race was African-American and whose color was black.

201.    The African-American panel member specifically asked Plaintiff "How do  you propose to bridge the equity gap between staff and students as it pertains to African-Americans at William Allen High School?"

202.    The aforesaid question was not included in the written questions to be

addressed by Plaintiff and was inappropriately asked during Plaintiff's interview.

203.    Plaintiff did not receive the promotion to Principal of William-Allen High School and it became clear to Plaintiff during the interview that he was never under bona fide consideration for said promotion.

### June 26, 2018 Meeting

204.    On June 26, 2018, Plaintiff met with Defendant Custer concerning her improper and punitive performance evaluation of Plaintiff.

205.    During the aforesaid meeting, Defendant Custer raised the issue of "professionalism" and immediately pointed to Plaintiff's three (3) day suspension without pay for speaking in defense of Mr. Mercado.

206.    In response,  Plaintiff provided substantial evidence in support of his proficiency in all categories of his job responsibilities and to refute the false and baseless domain components of his yearly evaluation.

207.    Plaintiff's "poor, needs to improve" rating and evaluation was a direct retaliation and punishment by Defendants for Plaintiff's above-described citizen's speech and protected conduct.

208.    Plaintiff's "poor, needs to improve" rating and evaluation was a direct retaliation and punishment by Defendants for Plaintiff's filing petitions, grievances, appeals and filing charges/complaints of discrimination with the Pennsylvania Human Relations Commission and the United States Equal Employment Opportunity Commission.

209.    Plaintiff's "poor, needs to improve" rating and evaluation was predicated upon false and defamatory accusations and was disseminated by Defendant Custer

through the pipeline to the other principals, assistant principals and administrators within Defendant School District, including the above-named Defendants.

210.    Plaintiff demanded a name-clearing hearing in order to address the derogatory "poor, needs to improve" and to address and rebut the false and derogatory accusations which formed the basis of said rating and evaluation.

211.    Defendants blocked and refused to afford Plaintiff a name-clearing hearing concerning the aforesaid rating and evaluation.

212.    Defendant Custer's giving Plaintiff a "poor, needs to improve" performance evaluation and refusal to afford Plaintiff a name-clearing hearing were overt acts  in furtherance of the conspiratorial agreements entered with Defendants Brown, Kruger, Kelly, Lovelidge, Parker and Edwards as entered into in March/April, 2017, May 2017, July 2017, November 2017 and April 2018.

**Safety Issues - Lack of Enforcement**

213.    During the 2018 calendar year, on a weekly basis, Plaintiff spoke openly to the public concerning Defendant School District's lack of guidelines, protocol and enforcement concerning students' bringing weapons or drugs at Harrison-Morton and the other schools within the Defendant School District.

214.    In October, 2018, an incident occurred at Harrison-Morton wherein a student brought a weapon on to the school premises.

215.    Once discovered, the weapon was removed from the student, however, the student was allowed to return to Harrison-Morton without having to fully complete the program/punishment for his bringing a weapon to school.

216.    Subsequent to the aforesaid incident, Plaintiff complained openly to the public about the dangerous condition existing at Harrison-Morton and other schools within the Defendant School District resulting from the lack of proper guidelines, protocols or enforcement by Defendant School District.

217.    In November, 2018, another incident occurred wherein a student brought a weapon onto the school premises at Harrison-Morton and the weapon was discovered and removed from the student, however, the student was not properly or fully reprimanded or disciplined for having brought a weapon onto the school premises and received only a minor, three (3) day suspension.

218.    After the aforesaid incident, Plaintiff continued to speak openly to the public and intensified his complaints concerning the lack of safety and danger to students and teachers resulting from Defendants inadequate guidelines, policies and protocols concerning weapons or contraband being brought onto school premises and the lack of proper enforcement thereof.

219.    Plaintiff's speech about the inadequate guidelines, policies and protocols concerning weapons or contraband being brought onto all schools within the Defendant School District was not pursuant to his job responsibilities as an assistant principal at Harrison-Morton.

**Continuing Violations - CRE Committee**

220.    During the 2018 calendar year, Defendant Custer assigned Plaintiff to the Community Responsive Education School Committee (hereinafter "CRE Committee").

221.    Defendant Custer as Committee leader and instructor of the CRE Committee directed Plaintiff to assume the same committee responsibilities as a classroom

teacher as opposed to the responsibilities of an administrator.

222.    Defendant Custer directed that Plaintiff serve under the direct authority of regular classroom teachers on said committee.

223.    Plaintiff avers that none of the Assistant Principals at the Raub Middle School, South Mountain Middle School and Trexler Middle School were directed to serve on committees under the supervision of classroom teachers as opposed to the school Principal.

224.    Defendant Custer's placing Plaintiff under the supervision of regular classroom teachers served to humiliate Plaintiff and undermine his position as a supervisor and leader within the Defendant School District.

225.    Defendant Custer's use of the CRE Committee to humiliate and undermine Plaintiff was a direct retaliation against Plaintiff for his above-described speech, filing of petitions, grievances and appeals and Complaint of Discrimination against Defendant School District.

226.    Defendant Custer's above-described conduct constituted a continuing violation of Plaintiff's rights and an overt act in furtherance of the conspiratorial agreements heretofore entered by Defendants Brown, Edwards, Kelly, Kruger, Parker and Lovelidge.

**Continuing Violations - February 27, 2019**

227.    On February 27, 2019, Defendant Custer ordered Plaintiff to appear in her office.

228.    Defendant Custer wrongfully accused Plaintiff of having inappropriate interaction with a student on January 24, 2019.

229.    Defendant Custer accused Plaintiff of being present on January 24, 2019,

when a student was physically assaulted and further accused Plaintiff of taking no action to assist the student.

230. During said meeting, Plaintiff reminded Defendant Custer that he had undergone elbow surgery and that he was absent from work and at home, recovering from said surgery on the date of the assault.

231. After learning that Plaintiff had not returned to work until a full week after the alleged assault on January 24, 2017, Defendant Custer spoke with Ms. Keeney concerning the alleged assault.

232. Ms. Keeney advised Defendant Custer that she had spoken with the student who was the victim of the assault on the next day, January 25, 2019.

233. Ms. Keeney further recorded documentation of her meeting with the assault victim on the day after the assault.

234. Contrary to Ms. Keeney's recorded information, the victim of the assault never appeared for school on the day after the assault nor did the victim speak with Ms. Keeney, as alleged in Ms. Keeney's recorded information.

235. Upon learning of Ms. Keeney providing false/incorrect recorded information concerning her alleged meeting with the assault victim, neither Defendant Custer, nor Defendant School District took any remedial or disciplinary action against Ms. Keeney.

236. Defendant Custer never apologized to Plaintiff for incorrectly and wrongfully accusing Plaintiff of standing by and doing nothing while a student was being assaulted in his presence.

237. Defendant Custer's false accusation against Plaintiff concerning the

-34-

January 24, 2019 assault of a student, served to embarrass and humiliate Plaintiff and damage

Plaintiff's reputation as an Assistant Principal and educator.

**Continuing Violations - March 6, 2019**

238.    On or about Wednesday, March 6, 2019, Plaintiff was advised by

another teacher that a student was improperly missing from a previous class and that he had

detected a strong odor of marijuana emanating from the student prior to lunch.

239.    Plaintiff advised the teacher of the proper protocols to follow and

strictly adhered to all policies and procedures adopted by the Defendant School District.

240.    Plaintiff strictly adhered to each policy, protocol and mandate

concerning controlled substances, paraphernalia, student searches and the Pennsylvania

Department of Education mandates for students who are eligible for special education.

241.    As a result, the aforesaid student was searched and found to be in

possession of a significant quantity of marijuana.

242.    Without cause or justification Defendants Custer and Brown interrogated

Plaintiff and demanded written explanations of every step taken by Plaintiff which resulted in the

student search and seizure of marijuana.

243.    Defendants Custer and Brown further subjected Plaintiff to a barrage of

emails questioning his adherence to all procedures, protocols and mandates and his motivation for

subjecting the student to a search.

244.    The student who was the subject of the search had previously brought

a weapon into school and as a result of that incident the student gave written permission in his file

to be the subject matter of random future searches.

-35-

245.    The search of the student on March 6, 2019, was not random and on the contrary was the result of reasonable suspicion and in strict conformance with Defendant School District's policies.

246.    Plaintiff's search of the student on March 6, 2019, was further in strict compliance with the past practice for drug searches at Harrison-Morton under the leadership of Defendant Custer.

247.    Plaintiff was further questioned by Defendants Brown, Custer and their representatives on Thursday, March 7, 2019, Friday, March 8, 2019, Saturday, March 9, 2019 and Monday, March 11, 2019.

248.    During this period, Plaintiff was subjected to a barrage of emails concerning his handling of the search of the student on March 6, 2019.

249.    Defendants Custer, Brown and their representatives without proper cause or justification investigated Plaintiff's handling of a sexual harassment incident dating back more than six (6) months.

250.    The investigation by Defendants Custer and Brown of Plaintiff concerning the aforesaid search served to disseminate false, embarrassing and stigmatizing written information implying Plaintiff had acted inappropriately and violated the rights of students during the aforesaid search and alleged sexual harassment incident which occurred more than six (6) months prior to the search on March 6, 2019.

251.    During the course of his employment, Plaintiff never received nor witnessed other administrators receive the opportunity to participate in any meaningful training on how to recognize and prevent discrimination against other teachers or students within the

Defendant School District.

252.    During the course of his employment, Plaintiff complained that he never witnessed Defendant School District's supervisory/management level employees promulgate and enforce strict rules involving the bringing of contraband or weapons by students at any of the schools within Defendant School District.

253.    On March 25, 2019, Plaintiff filed a Complaint in the United States District Court for the Eastern District of Pennsylvania at Case No. 5:19-cv-01258-JDW alleging violations of his civil rights and the case was assigned to the Honorable Joshua D. Wolson.

254.    Plaintiff's federal lawsuit alleged that Defendants' wrongful conduct:

        a)     damaged Plaintiff's otherwise unblemished record and stellar reputation as an educator and administrator;

        b)     stripped Plaintiff of his authority as an assistant principal at the Harrison-Morton Middle School and relegated Plaintiff to the role of teacher;

        c)     deprived Plaintiff of the respect afforded to his position as an assistant principal within Harrison-Morton, the school district and the community;

        d)     chilled and precluded his ability to speak as a citizen on matters of public concern; and

        e)     eliminated the Plaintiff's ability to be heard by the public with the same seriousness and respect as he enjoyed prior to Defendants' aforesaid improper conduct.

255.    As a result of Plaintiff's engaging in the above-described protected conduct and filing the federal, civil rights lawsuit, Defendants transferred Plaintiff out of Harrison-Morton Middle School and placed him as an assistant principal in the Union Terrace Elementary School (hereinafter "Union Terrace").

256.    During the period that Plaintiff worked as an Assistant Principal at Union Terrace, he continued to speak out against Defendants' above-described wrongful conduct, as more fully set forth in his federal complaint.

257.    During the Plaintiff worked at Union Terrace he complained that he had been "demoted" to the elementary school position because of his engaging in constitutionally protected conduct.

258.    On September 19, 2019, Plaintiff filed an Amended Complaint at Case No. 5:19-cv-01258-JDW.

259.    On or about December 10, 2019, an incident occurred at the Union Terrace Elementary School, wherein a seven year old student (hereinafter "M.O.") had a physical confrontation with another student in the classroom and was highly agitated, volatile and violent.

260.    M.O., while agitated, engaged in threatening activity against the classroom teacher, Elizabeth Rhodes (hereinafter "Ms. Rhodes") who was pregnant at the time.

261.    Ms. Rhodes was so threatened by M.O.'s behavior that she took out her cell phone, held it upright and advised M.O. that she was going to record his conduct and send it to his mother.

262.    Plaintiff made several attempts to de-escalate the situation.

263.    Plaintiff attempted to persuade M.O. to settle down and to return to his seat, at which time M.O. made several physical attacks against Plaintiff.

264.    In response to M.O.'s out of control actions, Plaintiff took preventative measures in order to prevent M.O. from hurting himself, other students, Ms. Rhodes and Plaintiff.

265.    The actions taken by Plaintiff were not violative of any CPI Manual and/or

accepted standards which applied to the facts of this incident and the violent conduct of M.O..

266.    Due to the changing, explosive behavior of M.O. the risk that said behavior posed to M.O., other students, Ms. Rhodes and Plaintiff, the actions taken by Plaintiff were in compliance with CPI Manual and all accepted standards governing the facts of this incident.

267.    Plaintiff was able to momentarily subdue M.O.  and to convince him to walk out of the classroom without injuring any party.

268.    M.O. was not injured in any way from Plaintiff's conduct  nor did he require medical attention.

269.    M.O. willingly left the classroom with Plaintiff and walked with him down the hall corridor.

270.    At no time did M.O. state that he was injured nor did he request medical treatment of any kind.

271.    Upon being accompanied by M.O. to his office, Plaintiff telephoned M.O.'s mother, advised her of the incident involving her son and afforded her an opportunity to speak with her son.

272.    At no time did M.O.'s mother or M.O. complain that M.O. had  sustained injury of any kind as a result of the measures taken by Plaintiff in the classroom.

273.    Defendant Hahn, Principal of Union Terrace Elementary School arrived at the classroom at the end of the incident and therefore did not observe M.O.'s actions prior to his being subdued by Plaintiff.

274.    Defendant Hahn witnessed the procedure implemented by Plaintiff to

defend himself and to subdue M.O. and initially stated that he had no problem with the measures taken by Plaintiff.

275.    Defendant Hahn reported the aforesaid incident to School District supervisory personnel, including Defendant Brown and Human Resources Director Defendant Pidgeon.

276.    Defendant Hahn, on numerous occasions, spoke with Plaintiff about M.O.'s explosive and violent outbursts, his concern for the safety of Ms. Rhodes who was pregnant and of the need for Plaintiff to be vigilant for the safety of Ms. Rhodes, the other students and M.O. himself.

277.    At that time, Defendant Hahn contacted the School District administrators, there had been numerous incidents wherein teachers had defended themselves from attacks by students and placed their hands on students in order to de-escalate a situation and to prevent physical injury to the student, teacher or others.

278.    None of the incidents bearing any similarity to the facts of this incident giving rise to the within appeal resulted in the teacher being terminated from his or her employment.

**Civil Conspiracy Defendants Brown, Pidgeon and Hahn**

279.    Defendant Hahn advised Defendant Brown as to what had transpired in the classroom between Plaintiff and M. O.

280.    Defendants Brown, Pidgeon and Hahn entered into a agreement, understanding, plot, plan and conspiracy to retaliate against Plaintiff for exercising his protected First Amendment rights and took an overt act in furtherance of said conspiracy by setting

termination proceedings in motion against Plaintiff.

281.    After being contacted by Defendant Hahn, Defendant Brown, in a memo, ordered Defendant Hahn to refer his investigation to Defendant Pidgeon in order to set in motion termination proceedings against Plaintiff.

282.    As a result of Plaintiff's federal litigation and complaints before the Pennsylvania Human Relations Commission and the United States Equal Employment Opportunity Commission, a conflict of interest existed between Plaintiff and Defendant Brown.

283.    Due to the aforesaid conflict of interest, Defendant Brown had a duty to recuse herself from Defendant Hahn's investigation and from ordering Defendant Pidgeon to initiate termination proceedings against Plaintiff.

284.    Defendant Brown improperly refused to recuse herself from this matter and on the contrary, approved draconian disciplinary measures which had not been implemented to other teachers who defended themselves in a similar or identical manner to Plaintiff.

285.    In response to the directive given by Defendant Brown, Defendant Hahn contacted Defendant Pidgeon and as a result, termination proceedings were set into motion.

286.    Defendant Pidgeon scheduled a *Loudermill* hearing for January 9, 2020.

287.    In order to comply with Defendant Brown's directive, Defendant Pidgeon initiated false, exaggerated and unwarranted charges against Plaintiff, including the false charge that he **"willfully interfered and hindered an ongoing investigation"** and further alleged that he caused serious bodily injuries, requiring medical treatment to a seven year old student.

288.    Despite Ms. Rhodes statement that Plaintiff, on several occasions, attempted to de-escalate the situation, the *Loudermill*  notice alleged that Plaintiff's **"handling**

**of this student did not conform to accepted or recognized techniques of restraint or de-escalation of student behavior"**.

289.    At the *Loudermill* hearing, neither Defendant Hahn nor any representative of the School District could provide a scintilla of evidence that Plaintiff had attempted to or had interfered with the investigation.

290.    The testimony at the *Loudermill* hearing further confirmed that Plaintiff had not violated any **"accepted or recognized techniques of restraint"** and that he had made numerous attempts to de-escalate M.O.'s behavior.

291.    Notwithstanding the failure of Defendant School District to provide any credible evidence of improper conduct by Plaintiff at the *Loudermill* hearing or to establish any conduct which justified termination, Defendants Hahn and Pidgeon, at the direction of Defendant Brown, moved for a termination hearing before the Board of School Directors for the School District.

292.    On February 4, 2020, Judge Wolson entered a Memorandum Opinion addressing Defendants' Motion To Dismiss Under Federal Rule Of Civil Procedure 12(b)(6) and Plaintiff's response thereto.

293.    Contemporaneous to said Memorandum Opinion, Judge Wolson ordered that Plaintiff file a *Monell/*Municipal Liability Statement within seven (7) days.

294.    On February 11, 2020, Plaintiff filed a *Monell* Case Statement wherein he specifically set forth additional acts of discrimination on behalf of Defendants Parker, Brown, Pidgeon, involving Defendant School District's employees, Dr. Kimberly Mackey, Cynthia Craig-Booher, Jen Ramos, Jacqui Scott, Kim Walck, Ralph Lovelidge (Defendant herein) and Tara

Houser. A copy of Plaintiff's _Monell_ Case Statement is attached hereto marked (Exhibit "A") and incorporated herein.

### Conflict of Interest - Marc S. Fisher, Esquire

295.    A termination hearing before a Hearing Examiner appointed by the Board of School Directors for the Allentown School District was scheduled for Tuesday, March 10, 2020 and Marc S. Fisher, Esquire, (hereinafter "Mr. Fisher") was appointed Hearing Officer.

296.    Prior to March, 2020, Mr. Fisher had a professional relationship with and had provided paid legal representation and/or advice to the School District, a Defendant in Plaintiff's federal action and federal and state agency complaints.

297.    As a result of Mr. Fisher's professional relationship with the School District, a named defendant in all of Plaintiff's litigation, Mr. Fisher had a conflict of interest which precluded his accepting the position of hearing examiner concerning the LiCausi termination hearing.

298.    Mr. Fisher violated this conflict of interest by accepting the position of hearing officer for the LiCausi termination proceeding.

299.    A termination hearing was scheduled for March 10, 2020, wherein Plaintiff was represented by James J. Burke, Esquire (hereinafter "Attorney Burke").

300.    Prior to the termination hearing on March 10, 2020, Mr. Fisher, _in camera,_ advised Attorney Burke that he had a past professional relationship with the School District and that he had provided paid legal representation and/or advice to the School District in labor and personnel related matters.

301.    At the start of  the termination hearing on March 10, 2020, Attorney

Burke moved for Mr. Fisher's recusal as Hearing Officer.

302.    Mr. Fisher refused to recuse himself as Hearing Officer.

303.    As justification for his refusing to recuse himself, Mr. Fisher stated that he was "not an employee" of the School District nor affiliated with the School District's Solicitor's law firm.

304.    Mr. Fisher argued that his being paid by the School District for his services in the within matter did not mandate his recusal as Hearing Officer, even though the School District is named as a defendant in all of Plaintiff's litigation.

305.    At no time did Mr. Fisher disclose on the record that he had a prior paid professional relationship and/or had rendered paid legal services to the School District and School Board.

306.    At no time did Mr. Fisher disclose on the record that he had served as a Hearing Examiner in termination proceedings brought by the School District against Jose Rosado, former Director of Alternative Education.

307.    At no time did Mr. Fisher disclose on the record that he had sided with the School District and recommended that Mr. Rosado be terminated or that Mr. Rosado had been terminated in accordance with Mr. Fisher's recommendation.

308.    Mr. Fisher's failure or refusal to disclose his past professional relationship with the School District and his refusal to recuse himself as Hearing Officer violated all applicable Pennsylvania law relating to the appearance of impropriety and conflicts of interest.

309.    As a result of the aforesaid conflict of interest Mr. Fisher lacked the impartiality necessary to serve as Hearing Officer in the termination proceedings.

310.    As a result of the aforesaid conflict of interest, Mr. Fisher's lack of impartiality and his past paid professional relationship with the School District, Mr. Fisher failed to question each witness in order to ascertain any bias against Plaintiff or undue influence asserted by Defendant Parker and/or Defendant Brown in retaliation for Plaintiff's federal litigation naming both individuals.

311.    Defendant Hahn testified that he spoke directly with Defendant Brown after the incident on December 10, 2019 and as a result of this conversation and Defendant Brown's written directive, he contacted Defendant Pidgeon in order to initiate termination proceedings.

312.    Mr. Fisher failed or refused to question Defendant Hahn about the nature of Defendant Brown's directives.

313.    During the termination proceedings, Defendant Pidgeon incorrectly testified that he had been added as a Defendant in Plaintiff's federal litigation.

314.    Mr. Fisher failed or refused to question Defendant Pidgeon as to any bias he may have  against Plaintiff due to Plaintiff's federal litigation.

315.    Mr. Fisher refused to question Defendant Pidgeon as to any bias he may have against Plaintiff due to Plaintiff's prior protected speech, as more fully described in Plaintiff's federal litigation.

316.    At the conclusion of the termination hearing, Defendant Pidgeon stated to Plaintiff and Attorney Burke that "it appears that I have recently been added as a defendant in Plaintiff's federal litigation."

317.    Defendant Pidgeon was mentioned in a federal *Monell* statement in the Plaintiff's federal litigation and he erroneously concluded that he had been added as a new

defendant to said litigation.

318.    Defendant Pidgeon further stated to Plaintiff and Attorney Burke that, but for Plaintiff's federal litigation, "we wouldn't be here" at a termination hearing.

319.    Any proper, unbiased, impartial questioning by a Hearing Officer would have uncovered the above-described bias and retaliation against Plaintiff by the School District and its management level personnel due to Plaintiff's federal litigation.

320.    Mr. Fisher ignored contradictory statements, afforded credibility to incredible accusations/evidence and failed to consider the bias of the witnesses against Plaintiff.

321.    Mr. Fisher ignored the evidence/testimony that M.O. remained in an extremely agitated, volatile, violent mood at the time that Plaintiff was dispatched to the classroom.

322.    Mr. Fisher downplayed M.O.'s agitated, volatile, violent mood and without any supporting evidence or testimony, found that M.O. was merely upset because he had to put away his toys at the end of recess.

323.    Mr. Fisher further down-played the seriousness and volatile nature of the confrontation between M.O. and another student which required intervention by Defendant Hahn and a behavioral specialist.

324.    Due to the aforesaid conflict of interest, Mr. Fisher refused to address or consider Plaintiff's civil rights action, wherein Defendant School District is named as a Defendant.

325.    Due to the aforesaid conflict of interest, Mr. Fisher did not address or consider whether the Defendants were retaliating against Plaintiff and attempting to terminate his

employment as a retaliation against Plaintiff for his prior, constitutionally protected activity, as described in his federal lawsuit.

326.    Due to the aforesaid conflict of interest, Mr. Fisher did not address or consider Defendant Pidgeon's mistaken belief and testimony that he had been added as a Defendant to Plaintiff's federal lawsuit.

327.    Due to the aforesaid conflict of interest, Mr. Fisher did not question or explore whether Defendant Pidgeon harbored any bias or animosity against Plaintiff or had retaliated against Plaintiff because of Defendant Pidgeon's mistaken belief that he had been added as a Defendant to Plaintiff's federal lawsuit.

328.    Due to the aforesaid conflict of interest, Mr. Fisher never addressed or considered whether the termination proceedings or the testimony of Defendants Hahn and Pidgeon were the result of Defendants' retaliation against Plaintiff for his constitutionally protected activity.

329.    Subsequent to the hearing on March 10, 2020, Mr. Fisher prepared an Adjudication containing Findings of Fact, Legal Discussion, Conclusion and Order and administrative recommendations which were submitted to the Board of School Directors for a vote.

330.    The adjudication document submitted by Mr. Fisher contained blatant errors of fact, a misapplication of law, a false, unsupported, improper Conclusion and Order and an inaccurate, improper and indefensible administrative recommendation.

331.    The adjudication was crafted in such an erroneous, improper, unjust, one-sided manner so as to insure a vote by the School Board to terminate Plaintiff.

-47-

332.    The improper adjudication proposed by Mr. Fisher was the direct product of Mr. Fisher's conflict of interest, lack of impartiality and loyalty to the School District, with whom he had a paid professional relationship.

333.    The adjudication submitted by Mr. Fisher was so one-sided in favor of the School District and against Plaintiff so as to render the School Board's vote on terminating Plaintiff's employment to be nothing more than perfunctory.

334.    As a result of Mr. Fisher's conflict of interest and refusal to recuse himself as the hearing officer, Plaintiff was denied a full and fair opportunity to litigate the issue of whether the termination proceedings were a direct and proximate result of Defendants' retaliating against Plaintiff for his constitutionally protected activity.

335.    On April 30, 2020, Defendant School District terminated Plaintiff's employment.

336.    During the period from December 10, 2019 through April 30 2020, Defendants falsely accused Plaintiff that Plaintiff had assaulted a seven year old student with disabilities, that he had body slammed and choked a seven year old student in front of the entire class, conducted an improper restraint on a seven year old, threatened a student in the classroom and inflicted injuries upon the student which required hospitalization.

337.    Defendants further falsely accused Plaintiff of intemperance, cruelty, immorality, persistence and willful violation of school laws of the Commonwealth of Pennsylvania.

338.    Defendants disseminated the aforesaid false and defamatory allegations against Plaintiff throughout the Defendant School District.

-48-

339.    As a result fo Mr. Fisher's conflict of interest and refusal to recuse himself as the Hearing Officer, Plaintiff was never afforded a proper name-clearing hearing to address the false, defamatory accusations made by Defendants and the negative impression of Plaintiff created therefrom.

340.    Defendants' above-described conduct eliminated any possibility for Plaintiff to successfully obtain promotion within Defendant School District prior to his termination and/or to pursue a position of principal or assistant principal at the middle school or high school level in the surrounding school districts subsequent to his termination of employment with Defendant School District.

341.    Since Plaintiff's termination, he has unsuccessfully applied for employment at the following schools and/or institutions that serve the needs of children:

a)      Northampton High School;
b)      Catasauqua High School;
c)      Notre-Dame Green Pond High School;
d)      Reading High School;
e)      Wilson Area High School;
f)      Steelton-Highspire School District;
g)      Bethlehem Christian School;
h)      Bristol Township School District;
i)      Pennridge School District;
j)      Innovative Arts Academy;
k)      Lehigh Valley Charter High School for the Arts;
l)      Lehigh University;
m)      Northampton County Juvenile Youth Worker;
n)      Pinebrook Family Answers and
o)      Preventative Measures.

342.    In being denied employment opportunities at each of the above institutions, Plaintiff was advised that he is "unemployable" due to the false and defamatory accusations made against him by Defendants.

343.    Defendants' above-described retaliatory conduct wrongfully deprived Plaintiff of three (3) days pay and has permanently stained and/or tarnished Plaintiff and his professional-personnel file.

344.    Defendants' above-described retaliatory conduct has served to embarrass and humiliate Plaintiff, negatively impact and/or destroy Plaintiff's reputation.

345.    Defendant's above-described retaliatory conduct has had a devastating effect on Plaintiff's family, Plaintiff's emotional well-being and upon Plaintiff's professional career.

**Unemployment Benefits**

346.    Subsequent to his termination, Plaintiff applied for and was granted unemployment compensation benefits, however, Defendant School District, by and through Defendant Pidgeon appealed said decision.

347.    As a direct retaliation for Plaintiff's conduct, Defendant School District, by and through Defendant Pidgeon, improperly argued that Plaintiff to be denied unemployment benefits.

348.    The hearing referee, relying on Defendant Pidgeon's arguments, sustained Defendant School District's appeal and denied Plaintiff unemployment benefits.

349.    The Referee's Decision in favor of Defendant School District was reversed by the Unemployment Compensation Appeal Board, who determined that, contrary to Defendant Pidgeon's arguments, Plaintiff was entitled to unemployment compensation benefits.

**Cobra Benefits**

350.    By letter dated April 1, 2020, representatives of Highmark Blue Shield PPO

advised Plaintiff that his medical/health benefits had been terminated. (A copy of said letter is attached hereto, marked Exhibit "B" and incorporated herein.)

351.    The Defendants' decision to terminate Plaintiff's health benefits was made thirty (30) days in advance of the School Board's decision to terminate Plaintiff.

352.    On May 11, 2020 and May 18, 2020, Plaintiff contacted Defendant Pidgeon in order to secure the extension of his medical benefits under Defendant School Districts's *Cobra Plan.*

353.    Plaintiff advised Defendant Pidgeon that his wife and daughter had experienced serious medical issues requiring physicians' appointments during the month of April, 2020.

354.    Plaintiff further requested that Defendant Pidgeon/Defendant School District insure providing the *Cobra* benefits without any gap in coverage.

355.    On May 11, 2020, Defendant Pidgeon assured Plaintiff that all *Cobra* notice and documentation had been completed and that he would take all necessary steps to insure that Plaintiff did not suffer a gap in medical coverage.

356.    On May 18, 2020, Defendant Pidgeon advised Plaintiff that his medical benefits had not been terminated in April, 2020, and that Plaintiff's *Cobra* benefits would be extended to prevent any gap in medical coverage.

357.    As a direct retaliation for Plaintiff's protected First Amendment activity and referring to Defendant Pidgeon in his *Monell* Statement, Defendant Pidgeon never filed nor provided Plaintiff with the proper forms, notices or documentation for the extension of Plaintiff's *Cobra* benefits.

358.    As a direct result of Defendant Pidgeon's mistaken belief that he had been added as a Defendant to Plaintiff's federal lawsuit and his retaliatory actions resulting directly therefrom, Plaintiff has suffered a gap in medical coverage from the time of his termination until the filing of the within lawsuit.

359.    As a further result of Defendant Pidgeon's retaliatory actions, Plaintiff has incurred numerous medical bills which have created a financial burden/hardship upon Plaintiff.

**Vacation and Sick Days**

360.    On February 21, 2020, Defendant School District terminated Plaintiff's pay pending a final employment decision from the Allentown School Board.

361.    As of February 21, 2020, Plaintiff had accrued approximately 9.75 unused vacation days (amounting to $ 3,772.28) and 70.25 unused sick days (amounting to $ 27,179.73).

362.    As a direct retaliation for Plaintiff's protected First Amendment activity, Defendant School District, by and through Defendant Pidgeon improperly denied Plaintiff payment for his unused vacation days and unused sick days.

363.    Defendant Pidgeon engaged in the above-described intentional, outrageous and extreme conduct which caused severe emotional distress to Plaintiff.

364.    Defendant Pidgeon's extreme and outrageous conduct caused physical harm to Plaintiff in the nature of loss of weight, sleeplessness, headaches and depression.

365.    As a result, Plaintiff has been forced to seek medical attention and has been prescribed the anti-depressant medications Wellbutrin and Xanax.

366.    The above-described wrongful and illegal conduct of Defendant Pidgeon acting with individual malice and prejudice and further acting under color of state law and

depriving Plaintiff of his constitutional rights, was adopted, condoned and participated in by

Defendant School District, its policymakers, high-ranking officials and supervisory/management

level employees.

**COUNT I**
**PLAINTIFF VS. ALL DEFENDANTS**
**FIRST AMENDMENT- FREEDOM OF SPEECH**
**42 U.S.C. 1983 - RETALIATION**

367.    Plaintiff incorporates Paragraphs 1 through 366 above as though the same

were more fully set forth at length herein.

368.    Plaintiff avers that Defendants Brown, Custer, Kelly, Kruger, Edwards,

Lovelidge and Parker opposed and were angered by Plaintiff's exercising his right to freedom of

speech as a citizen on matters of public concern.

369.    The aforesaid Defendants entered into one or more conspiracies and

joined in one or more agreements, plans and/or plots to retaliate against Plaintiff, damage

Plaintiff's reputation, coerce Plaintiff's resignation and/or lay the groundwork to terminate

Plaintiff's employment due to Plaintiff's exercising his right to freedom of speech regarding

matters of public concern.

370.    Defendants Brown, Custer, Kelly, Kruger, Edwards, Lovelidge and

Parker, acting under color of state law, including but not limited to any color of any statute,

ordinance, regulation, custom or usage and motivated by prejudice against Plaintiff due to

Plaintiff's exercise of his First Amendment rights, including his right to freedom of speech as a

citizen on matters of public concern, engaged in conduct that deprived Plaintiff of his rights,

privileges and/or immunities as secured by the Constitution of the United States of America, the

applicable statutes and case law therein.

371.    Defendants Pidgeon and Hahn pursuant to an agreement, understanding, plot, plan and conspiracy with the above-named Defendants, acting under color of state law and motivated by prejudice against Plaintiff due to Plaintiff's exercise of his First Amendment rights, engaged in conduct that deprived Plaintiff of his rights, privileges and/or immunities as secured by the Constitution of the United States of America, the applicable statutes and case law therein.

372.    Plaintiff avers that his exercising of his rights under the First Amendment, including his right to free speech as a citizen on a matter of public concern, was a substantial and motivating factor in the unlawful and retaliatory conduct of Defendants as more fully set forth above.

373.    Defendant School District has adopted, condoned and participated in the above-described wrongful and discriminatory actions of Defendants Brown, Custer, Kelly, Kruger, Edwards, Lovelidge, Parker, Pidgeon and Hahn.

374.    At all times herein mentioned, Defendant School District had an official policy or custom of engaging in retaliation against employees who exercised their First Amendment rights, including the right to freedom of speech as a citizen on matters of public concern.

375.    Defendants were angered by Plaintiff's above-described speech, as a citizen on matters of public concern, which includes, but is not limited to Plaintiff's statements that:

a)    Defendant School District had become a racially hostile environment for teachers, parents and students whose race was Caucasian or Hispanic and whose color was white or brown;

-54-

b)      Defendant Brown had acquiesced to, condoned and
accepted Ms. Williams' hostile and physically abusive
treatment of students whose race was Caucasian or Hispanic
and whose color was white or brown;

c)      Defendant Brown who is African-American and black
afforded disparately favorable treatment to Ms. Williams who
also was African-American and black;

d)      Defendant Brown had committed a crime by disseminating
photographs/images of minor students engaged in sex acts to the
parents at the Raub Middle School;

e)      Defendant Brown's actions should be referred to the
Lehigh County District Attorney's Office for further investigation
and possible criminal prosecution;

f)      Confusion, ambiguities and safety issues/risks existed in Defendant
School District due to the negligent and improper manner in which
the anti-harassment policy was being administered, supervised and
enforced by Defendant Brown;

g)      Defendant Brown had defied or ignored the safety mandates
set forth by the Department of Justice;

h)      The safety of students and teachers was at risk due to
Defendant Brown's flagrant defiance of the mandates
imparted by the Department of Justice;

i)      Defendant School District had treated Mr. Mercado
disparately favorably than Defendant Brown and Ms. Williams;

j)      Defendant School District had forced Mr. Mercado's
resignation for a deminimus offense while imposing no
discipline to Defendant Brown for disseminating the photographs/
images of minor children engaged in sex acts to parents at the raub
Middle School or to Ms. Williams for her verbally and physically
assaultive behavior.

k)      For racially impermissible reasons, Defendant School District had
forced Mr. Mercado's resignation and looked the other way
concerning the conduct of Defendant Brown and Ms. Williams;

-55-

l)    Defendant School District engaged in unfair practices by hiring and promoting individuals to positions which they were professionally unqualified to assume or hold solely because their race was African-American and whose color was black;

m)    Defendant School District promoted Defendant Brown to the position of Assistant Superintendent, despite her never having worked as a classroom teacher or served as an administrator, solely because her race is African-American and color is black;

n)    Plaintiff intended to engage legal counsel in order to obtain access to his professional-personnel file;

o)    Plaintiff intended to file complaints of discrimination with the appropriate state and federal agencies;

p)    Ms. Williams, Defendants Brown, Parker and Edwards were racist and harbored prejudice and animosity against Plaintiff and others based on race and color; and

q)    The safety of all students and teachers was at risk due to Defendant School District's inadequate guidelines, policies, protocols and lack of enforcement concerning students' bringing weapons and contraband being on to school premises.

376.    During the period from August/September, 2019 through December 10, 2019, Plaintiff repeated his above-described speech with other supervisors, co-employees of Defendant School District and members of the community.

377.    Plaintiff's above speech was not pursuant to his duties and responsibilities as an assistant principal at the Harrison-Morton Middle School or at Union Terrace and constituted citizen's speech.

378.    Each disciplinary action imparted by Defendants was contemporaneous to Plaintiff's above-described citizen's speech on matters of public concern.

379.    The aforesaid custom and policy in retaliating against employees who

exercise their First Amendment rights was a direct and proximate cause of the deprivation of Plaintiff's rights and his resulting injuries and damages.

380.    As a result of the aforesaid actions of Defendants, Plaintiff had sustained and will continue to sustain damages, including mental anguish, emotional distress, embarrassment, humiliation, outrage and the loss of present and future employment opportunities.

WHEREFORE, Plaintiff Joseph A. LiCausi respectfully requests that this Honorable Court enter judgment in favor of the Plaintiff and against Defendants, jointly and severally and determine that the Plaintiff has suffered the substantial and continuing injuries set forth above and that said injuries resulted from the deprivation of his civil and constitutional rights, discrimination and other wrongful conduct by Defendants and award Plaintiff the following relief:

A.    A declaration that Defendants have violated Plaintiff's civil rights;

B.    Compensatory damages in excess of One Hundred Fifty Thousand ($ 150,000.00) Dollars;

C.    Punitive damages, as appropriate, against the individually named Defendants in their individual capacities;

D.    Exemplary damages, as applicable;

E.    Removal of all reprimands, unsatisfactory evaluations, letters of discipline and any and all documents containing unwelcome, unwarranted and adverse accusations against Plaintiff during the period from October, 2016 until the present;

F.    Reinstatement of all yearly evaluations of Plaintiff to a "satisfactory" or overall "proficient rating";

G.    Authorization of Plaintiff's transfer to a Social Studies classroom as previously requested, in writing, by Plaintiff;

H.    Offering Plaintiff the next opening for the position of high school principal within the Defendant School District;

I.    Injunctive relief, including entering an Order enjoining Defendants, and all supervisory and management level employees of the Defendant School District from engaging in further violations of the right to freedom of speech and to petition the government for the redress of grievances and the right to procedural and substantive due process and directing that they undertake a remedial program to provide regular and periodic training to their employees concerning the mandates of the First and Fourteenth Amendments to the United States Constitution;

J.    Attorney's fees, costs of suit and pre-judgment interest; and

K.    Such other equitable relief as this Honorable Court should deem just and proper.

## COUNT II
## PLAINTIFF VS. ALL DEFENDANTS
## FIRST AMENDMENT-PETITION FOR REDRESS OF GRIEVANCES
## 42 U.S.C. 1983 - RETALIATION

381.    Plaintiff incorporates Paragraphs 1 through 380 above as though the same were more fully set forth at length herein.

382.    During the period from May, 2017 to the present, Plaintiff has filed petitions/appeals of the illegal, unwarranted and unwelcome discipline imparted to Plaintiff by Defendants in direct retaliation for Plaintiff exercising his First Amendment right to speech, as a citizen, on matters of public concern.

383.    Plaintiff filed a petition/appeal of Defendants wrongful reprimand alleging that Plaintiff had engaged in "racial retaliation" with Ms. Williams.

384.    Plaintiff filed a petition/appeal of Defendants' verbal and written reprimand resulting from Plaintiff speaking with a Solicitor's representative in May, 2017.

385.    The aforesaid written and verbal reprimands were issued by Defendants

-58-

because Plaintiff had complained to the Solicitor's representative about the ambiguities and confusion in the anti-harassment policy and the investigations as administered, supervised and enforced by Defendant Brown.

386.    Plaintiff filed a petition/appeal from a verbal and written reprimand given by Defendants Lovelidge, Custer and Brown on May 17, 2017.

387.    The aforesaid reprimand was a direct retaliation for Plaintiff's complaints about the ineffective, incompetent and dangerous manner in which Defendant Brown administered the sexual harassment policies, investigations and dispositions.

388.    The aforesaid discipline was a further retaliation for Plaintiff's complaints about Defendant Brown's disseminating photographs/images of minors engaged in sex acts to parents at the Raub Middle School.

389.    The aforesaid discipline was a further retaliation for Plaintiff's assertion that Defendant Brown's conduct in disseminating photographs/images to the parents at the Raub Middle School constituted a criminal offense for which she should be fully investigated and prosecuted.

390.    On August 17, 2017, Plaintiff filed a petition and appeal from a written reprimand issued by Defendants Brown and Lovelidge on June 29, 2017.

391.    In support of his appeal Plaintiff accused Defendant Brown and Ms. Williams of being racist and of taking action against Plaintiff solely for racially impermissible reasons.

392.    The aforesaid written reprimand involved Defendants' baseless accusation that Plaintiff engaged in racial targeting of Ms. Williams from September 6, 2016 to October 11,

2016.

393.    In November, 2017, Plaintiff attempted to file an appeal from the improper, illegal, three (3) day suspension without pay imparted by Defendant School District by and through Defendants Edwards, Kruger, Kelly and Custer in November, 2017.

394.    The aforesaid discipline was the result of Plaintiff's speech on behalf of Mr. Mercado.

395.    Defendants blocked Plaintiff's appeal by advising him that his only recourse was to file a "rebuttal letter".

396.    During the period from November, 2017 to April, 2018, Defendants wrongfully and illegally denied Plaintiff access to his permanent, professional-personnel file, in order to preclude Plaintiff from fully effecting an appeal of his unpaid three (3) day suspension.

397.    On May 18, 2018, Plaintiff filed a charge/Complaint of Discrimination against Defendant School District with the Pennsylvania Human Relations Commission and United States Equal Opportunity Employment Commission.

398.    Plaintiff's filing petitions, appeals and a Complaint of Discrimination to re-dress Defendants' above-described illegal conduct is protected under the First Amendment.

399.    Plaintiff avers that Defendants were angered by Plaintiff's filing of petitions, appeals and Complaints of Discrimination with the state and federal agencies.

400.    Defendants further opposed and were angered by Plaintiff's continuous attempts to gain access to his professional-personnel file, including Plaintiff's demanding that Defendant Parker intercede on his behalf in this regard.

401.    Defendants Brown, Custer, Kelly, Kruger, Edwards, Lovelidge and

Parker entered into one or more conspiracies and joined in one or more agreements, plans and/or plots to retaliate against Plaintiff for Plaintiff's exercising his right to petition the government for the redress of grievances.

402.    Defendants Brown, Custer, Kelly, Kruger, Edwards, Lovelidge and Parker acting as supervisory, management level employees of Defendant School District, acting under color of state law, including but not limited to color of any statute, ordinance, regulation, custom or usage and motivated by prejudice against Plaintiff due to Plaintiff's exercise of his First Amendment rights, including the right to petition the government for the redress of grievances, engaged in conduct that deprived Plaintiff of his rights, privileges and/or immunities as secured by the Constitution of the United States of America and the applicable statutes and case law therein.

403.    Defendants Pidgeon and Hahn pursuant to an agreement, understanding, plot, plan and conspiracy with the above-named Defendants, acting under color of state law and motivated by prejudice against Plaintiff due to Plaintiff's exercise of his First Amendment rights, engaged in conduct that deprived Plaintiff his rights, privileges and/or immunities as secured by the Constitution of the United States of America, the applicable statutes and case law therein.

404.    Plaintiff avers that his exercising his rights under the First Amendment was a substantial and motivating factor in the unlawful and retaliatory conduct of Defendants, as set forth above.

405.    Defendant School District, by and through its supervisory/management level employees has had an official policy or custom of engaging in retaliation against citizens who are employed by or seek employment with Defendant School District and who exercise their First Amendment rights, including the right to petition the government for the re-dress of

grievances.

406.    The aforesaid policy and custom in retaliating against employees or citizens seeking employment with Defendant School District who exercise their First Amendment rights was a direct and proximate cause of the deprivation of Plaintiff's rights and the resulting injuries and damages.

407.    As a result of the aforesaid actions of Defendants, Plaintiff has sustained and will continue to sustain damages, including mental anguish, emotional distress, embarrassment, humiliation, outrage, the loss of wages and the loss of future employment opportunities within and outside Defendant School District.

408.    Defendant School District has condoned, accepted, adopted and participated in the unlawful actions and policies of Defendants Brown, Custer, Kelly, Kruger, Edwards, Lovelidge, Parker, Pidgeon and Hahn.

WHEREFORE, Plaintiff Joseph A. LiCausi respectfully requests that this Honorable Court enter judgment in favor of the Plaintiff and against Defendants, jointly and severally and determine that the Plaintiff has suffered the substantial and continuing injuries set forth above and that said injuries resulted from the deprivation of his civil and constitutional rights, discrimination and other wrongful conduct by Defendants and award Plaintiff the following relief:

A.    A declaration that Defendants have violated Plaintiff's civil rights;

B.    Compensatory damages in excess of One Hundred Fifty Thousand ($ 150,000.00) Dollars;

C.    Punitive damages, as appropriate, against the individually named Defendants in their individual capacities;

D.      Exemplary damages, as applicable;

E.      Removal of all reprimands, unsatisfactory evaluations, letters of discipline and any and all documents containing unwelcomed, unwarranted and adverse accusations against Plaintiff during the period from October, 2016 until the present;

F.      Reinstatement of all yearly evaluations of Plaintiff to a "satisfactory" or overall "proficient rating";

G.      Authorization of Plaintiff's transfer to a Social Studies classroom as previously requested, in writing, by Plaintiff;

H.      Offering Plaintiff the next opening for the position of high school principal within the Defendant School District;

I.      Injunctive relief, including entering an Order enjoining Defendants, and all supervisory and management level employees of the Defendant School District from engaging in further violations of the right to freedom of speech and to petition the government for the redress of grievances and the right to procedural and substantive due process and directing that they undertake a remedial program to provide regular and periodic training to their employees concerning the mandates of the First and Fourteenth Amendments to the United States Constitution;

J.      Attorney's fees, costs of suit and pre-judgment interest; and

K.      Such other equitable relief as this Honorable Court should deem just and proper.

### COUNT III
### PLAINTIFF VS. ALL DEFENDANTS
### FOURTEENTH AMENDMENT- PROCEDURAL DUE PROCESS
### 42 U.S.C.§ 1983

409.    Plaintiff incorporates Paragraphs 1 through 408 above as though the same were more fully set forth at length herein.

410.    The Plaintiff had the liberty and right to follow his chosen profession as a teacher, educator, supervisor, assistant principal and principal and to seek and obtain employment

in this profession free from unreasonable governmental interference.

411.    Defendants' reprimand of Plaintiff accused Plaintiff of engaging in racially discriminatory conduct for having no contact with Ms. Williams despite Defendant Custer's order to Plaintiff to have no contact with Ms. Williams.

412.    The aforesaid reprimand was distributed by Defendant Custer through the pipeline of information existing in Defendant School District to the other principals, assistant principals and supervisory/management level employees working in Defendant School District's main office, including the above-named Defendants.

413.    Friends and colleagues within the Defendant School District contacted Plaintiff and were aware of the contents of the aforesaid reprimand charging Plaintiff with racist behavior.

414.    In wrongfully suspending Plaintiff for three (3) days without pay, Defendants' wrongfully accused Plaintiff of violating the collective bargaining agreement and certain privacy rights by speaking on behalf of Mr. Mercado.

415.    Plaintiff's discipline and three (3) day suspension without pay was distributed by Defendant Custer through the pipeline of information existing in Defendant School District to the other principals, assistant principals and supervisory/management level employees working in Defendant School District's main office, including the above-named Defendants.

416.    Friends and colleagues of Plaintiff within Defendant School District were aware of the aforesaid suspension and accusations and contacted Plaintiff to speak with him about the wrongfulness of the aforesaid discipline to Plaintiff.

417.    The aforesaid false, contrived and punitive evaluations of the Plaintiff

further accused him of being professionally inadequate and "needing to improve" as an educator.

418.    The aforesaid punitive and defamatory evaluation was distributed by Defendant Custer through the pipeline of information existing in Defendant School District to the other principals, assistant principals and supervisory/management level employees working in Defendant School District's main office, including the above-named Defendants.

419.    Plaintiff's friends and colleagues within the Defendant School District contacted Plaintiff to speak with him about the aforesaid evaluation.

420.    During the period from December 10, 2019 through April 30 2020, Defendants falsely accused Plaintiff that Plaintiff had assaulted a seven year old student with disabilities, that he had body slammed and choked a seven year old student in front of the entire class, conducted an improper restraint on a seven year old, threatened a student in the classroom and inflicted injuries upon the student which required hospitalization.

421.    Defendants further falsely accused Plaintiff of intemperance, cruelty, immorality, persistence and willful violation of school laws of the Commonwealth of Pennsylvania.

422.    Defendants disseminated the aforesaid false and defamatory allegations against Plaintiff throughout the Defendant School District.

423.    The actions of the Defendants were damaging to the reputation of the Plaintiff.

424.    The actions of the Defendants violated the Plaintiff's liberty and property interests as guaranteed by the Fourteenth Amendment of the United States Constitution.

425.    Plaintiff cannot be deprived of his liberty or property interest, including

his three (3) day pay for the unwarranted suspension, the value of his unused sick days (amounting to $ 27,179.73) and the value of his unused vacation days (amounting to $ 3,772.28), without due process of law.

426.   Defendants intentionally refused to afford Plaintiff an opportunity to respond to the false, baseless and outrageous information publicly disseminated by Defendants concerning each wrongful, illegal disciplinary measure taken by Defendant School District by and through its supervisory/management level employees, including the individuals named as Defendants herein.

427.   Defendants deprived Plaintiff of his rights by subjecting Plaintiff to false and outrageous accusations, by placing false and damaging documents in Plaintiff's professional-personnel file, including those accusing him of being a racist, violating collective bargaining and privacy rights and being inadequate as an educator, by wrongfully suspending Plaintiff without pay, by refusing to afford Plaintiff proper appeal rights, by ignoring Plaintiff's petitions, grievances and appeals, by denying Plaintiff access to his professional-personnel file and by refusing to hear or act upon Plaintiff's petitions, grievances and appeals without affording Plaintiff a proper opportunity to be heard and to clear his name.

428.   Defendants refused to provide Plaintiff with a name-clearing hearing and blocked all attempts by Plaintiff and his Act 93 representative to obtain a name-clearing hearing.

429.   Plaintiff had a liberty interest in his good name and reputation and in his right to seek advancement, promotion and/or suitable employment within other school districts without interference by Defendants.

430.    The damage to Plaintiff's reputation was evident on his application and interview for the principal position at William Allen High School, whereby Plaintiff was surprised by inappropriate racially based questions and whereby Plaintiff's candidacy was summarily dismissed.

431.    The attacks on Plaintiff's reputation and good name, as contained in Plaintiff's personnel file, in addition to precluding Plaintiff from obtaining the principal position at William Allen High School, damaged Plaintiff's attempt to obtain suitable employment elsewhere.

432.    Defendants' above-described conduct eliminated any possibility for Plaintiff to successfully obtain promotion within Defendant School District prior to his termination and/or to pursue a position of principal or assistant principal at the middle school or high school level in the surrounding school districts subsequent to his termination of employment with Defendant School District.

433.    Since Plaintiff's termination, he has unsuccessfully applied for employment at the following schools and/or institutions that serve the needs of children:

a)    Northampton High School;
b)    Catasauqua High School;
c)    Notre-Dame Green Pond High School;
d)    Reading High School;
e)    Wilson Area High School;
f)    Steelton-Highspire School District;
g)    Bethlehem Christian School;
h)    Bristol Township School District;
i)    Pennridge School District;
j)    Innovative Arts Academy;
k)    Lehigh Valley Charter High School for the Arts;
l)    Lehigh University;
m)    Northampton County Juvenile Youth Worker;
n)    Pinebrook Family Answers and
o)    Preventative Measures.

434.    In being denied employment opportunities at each of the above institutions, Plaintiff was advised that he is "unemployable" due to the false and defamatory accusations made against him by Defendants.

435.    Plaintiff cannot be deprived of his liberty interest without due process of law and must be afforded a fair and impartial hearing.

436.    Defendants created and disseminated false and defamatory information and created a defamatory impression of Plaintiff which was stigmatizing to Plaintiff, his good name and reputation.

437.    In addition to suffering the stigma to his good name and reputation as a direct result of Defendants' wrongful conduct, Plaintiff was terminated from his position within Defendant School District.

438.    Defendants' above-described action in depriving Plaintiff of his liberty interest in his reputation and good name, triggered due process protection for the deprivation of Plaintiff's good name and reputation.

439.    Plaintiff had a right to a name clearing hearing to address the false, stigmatizing and professionally damaging information being disseminated by Defendant School District.

440.    Defendants repeatedly denied Plaintiff's requests for a name-clearing hearing.

441.    Defendants' wrongful conduct, in addition to infringing upon and damaging Plaintiff's reputation, have deprived Plaintiff of his above-described First Amendment rights, his three (3) day pay for the unwarranted suspension, the value of his unused sick days, the value of his

unused vacation days and his ability to pursue his chosen employment within the Defendant School District and elsewhere.

442.    Defendants have deprived Plaintiff of his Fourteenth Amendment right to procedural due process by engaging in the above-described conduct.

WHEREFORE, Plaintiff Joseph A. LiCausi respectfully requests that this Honorable Court enter judgment in favor of the Plaintiff and against Defendants, jointly and severally and determine that the Plaintiff has suffered the substantial and continuing injuries set forth above and that said injuries resulted from the deprivation of his civil and constitutional rights, discrimination and other wrongful conduct by Defendants and award Plaintiff the following relief:

A.    A declaration that Defendants have violated Plaintiff's civil rights;

B.    Compensatory damages in excess of One Hundred Fifty Thousand ($ 150,000.00) Dollars;

C.    Punitive damages, as appropriate, against the individually name Defendants in their individual capacities;

D.    Exemplary damages, as applicable;

E.    Removal of all reprimands, unsatisfactory evaluations, letters of discipline and any and all documents containing unwelcomed, unwarranted and adverse accusations against Plaintiff during the period from October, 2016 until the present;

F.    Reinstatement of all yearly evaluations of Plaintiff to a "satisfactory" or overall "proficient rating";

G.    Authorization of Plaintiff's transfer to a Social Studies classroom as previously requested, in writing, by Plaintiff;

H.    Offering Plaintiff the next opening for the position of high school principal within the Defendant School District;

I.    Injunctive relief, including entering an Order enjoining Defendants,

and all supervisory and management level employees of the Defendant School District from engaging in further violations of the right to freedom of speech and to petition the government for the redress of grievances and the right to procedural and substantive due process and directing that they undertake a remedial program to provide regular and periodic training to their employees concerning the mandates of the First and Fourteenth Amendments to the United States Constitution;

J.    Attorney's fees, costs of suit and pre-judgment interest; and

K.    Such other equitable relief as this Honorable Court should deem just and proper.

**COUNT IV**
**PLAINTIFF VS. INDIVIDUAL DEFENDANTS**
**42 U.S.C. § 1983 - CONSPIRACY**

443.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1 through 442 as though the same were more fully set forth at length herein.

444.    During the period from March, 2017 through January/February, 2020, Defendants Parker, Brown, Custer, Kelly, Lovelidge, Kruger, Edwards, Pidgeon and Hahn, acting under color of state law, including but not limited to color of any statute, ordinance, regulation, custom or usage and motivated by prejudice against Plaintiff, conspired with each other for the purpose of impeding, obstructing, hindering and defeating the due course of justice and with the intent to deny and deprive Plaintiff of his well established First and Fourteenth Amendment rights to freedom of speech, right to petition the government for redress of grievances and right to due process and retaliated against Plaintiff for exercising said rights and Defendant School District condoned, acquiesced to, adopted and participated in the unlawful conduct of said individual Defendants.

### March 26, 2017 - Defendants Brown and Custer

445.    On March 26, 2017, Defendants Brown and Custer acting in combination with each other entered an agreement or understanding among all or between any of the Defendants to plot, plan or conspire to carry out the alleged chain of events and overt acts, as set forth above, thereby causing Plaintiff to suffer and sustain deprivations, injuries and special damages as more fully set forth herein.

446.    Defendants Brown and Custer improperly and unlawfully acted to impart unwarranted and unwelcome discipline of Plaintiff in retaliation for Plaintiff's exercising his well established First Amendment rights of freedom of speech as a citizen on matters of public concern and to petition the government for the redress of grievances.

447.    Defendants Brown and Custer, made an overt act in furtherance of said conspiracy by issuing a reprimand to Plaintiff, charging Plaintiff with racial retaliation.

448.    On June 26, 2018, Defendant Custer took an overt act in furtherance of the conspiracy entered into on or about March 26, 2017 by issuing to Plaintiff a punitive "poor, needs to improve" rating and evaluation.

449.    An overt act in furtherance of the above conspiracy was taken by Defendant Custer during the 2018 calendar year, by placing Plaintiff on the CRE Committee and directing that Plaintiff, as an Assistant Principal be under the direct authority and supervision of regular classroom teachers and not the school Principal.

450.    An overt act in furtherance of the above conspiracy occurred on February 7, 2019, at which time Defendant Custer subjected Plaintiff to professional embarrassment and humiliation by falsely accusing Plaintiff of taking no action to assist a student

who had been assaulted on January 24, 2019.

451.    Defendant Custer made the aforesaid false accusation without conducting any proper investigation, which would have revealed that on January 24, 2019, Plaintiff was home, away from work, recovering from surgery.

452.    Another overt act in furtherance of the above conspiracies occurred on March 6, 2019, at which time Defendant Custer publicly subjected Plaintiff to embarrassment and humiliation by challenging Plaintiff's actions involving a search of a student who was determined to be possession marijuana.

453.    Defendant Custer made said accusation without having conducted a proper investigation which would have revealed that Plaintiff's actions were strictly in compliance with all procedures protocols, mandates, motivation for subjecting the student to a search and past practice for drug searches at Harrison-Morton under the leadership of Defendant Custer.

**May 17, 2017 - Defendants Lovelidge, Custer and Brown**

454.    On May 17, 2017, Defendants Lovelidge, Custer and Brown acting in combination with each other, entered an agreement or understanding among all or any of the Defendants to plot, plan or conspire to carry out the alleged chain of events and overt acts, as set forth above, thereby causing Plaintiff to suffer and sustain deprivations, injuries and special damages as more fully set forth herein.

455.    Defendants acted to impart unwarranted and unwelcomed discipline of Plaintiff in retaliation for Plaintiff's exercising his well established First Amendment rights by retaliating against Plaintiff for his speech with a representative of the Solicitor's Office and by issuing a verbal warning which was subsequently memorialized in writing and placed in Plaintiff's

professional-personal file.

456.     An agreement, understanding, plot, plan and conspiracy to retaliate against Plaintiff for his exercising his protected First Amendment rights was entered into on or about May 17, 2017 by Defendants Lovelidge, Custer and Brown resulting from Plaintiff's speech with the representative of the Solicitor's office.

457.     An overt act in furtherance of said conspiracy was taken on said date by Defendants Lovelidge, Custer and Brown issuing a verbal warning which subsequently was memorialized in writing and placed in Plaintiff's professional-personnel file.

458.     Another overt act in furtherance of the aforesaid conspiracies occurred on June 29, 2017, at which time Defendant Brown issued a reprimand accusing Plaintiff of having targeted Ms. Williams due to her race, during incidents which were alleged to have occurred from September 6, 2016 to October 11, 2016.

459.     On June 26, 2018, Defendant Custer took an overt act in furtherance of the aforesaid conspiracies by issuing to Plaintiff a punitive "poor, needs to improve" rating and evaluation.

460.     An overt act in furtherance of all of the above conspiracies was taken by Defendant Custer during the 2018 calendar year, by placing Plaintiff on the CRE Committee and directing that Plaintiff, as an Assistant Principal be under the direct authority and supervision of regular classroom teachers and not the school Principal.

461.     An overt act in furtherance of all of the above conspiracies took occurred on February 7, 2019, at which time Defendant Custer subjected Plaintiff to professional embarrassment and humiliation by falsely accusing Plaintiff of taking no action to assist a student

who had been assaulted on January 24, 2019.

462.   Defendant Custer made the aforesaid false accusation without conducting any proper investigation, which would have revealed that on January 24, 2019, Plaintiff was away from work and at home recovering from surgery.

463.   Another overt act in furtherance of all of the aforesaid conspiracies occurred on March 6, 2019, at which time Defendant Custer publicly subjected Plaintiff to embarrassment and humiliation by challenging Plaintiff's actions involving a search of a student who was determined to be possession marijuana.

464.   Defendant Custer made said accusation without having conducted a proper investigation, which would have revealed that Plaintiff's actions were strictly in compliance with all procedures, protocols, mandates, motivation for subjecting the student to a search and past practice for drug searches at Harrison-Morton under the leadership of Defendant Custer.

**July, 2017 - Defendants Kelly, Lovelidge, Custer and Brown**

465.    In July, 2017, Defendants Kelly, Lovelidge, Custer and Brown acting in combination with each other entered an agreement or understanding among all or between any of the Defendants to plot, plan or conspire to carry out the alleged chain of events and overt acts, as set forth above, thereby causing Plaintiff to suffer and sustain deprivations, injuries and special damages by imparting unwarranted and unwelcomed discipline to Plaintiff in retaliation for Plaintiff exercising his well established First Amendment rights.

466.   An overt act was taken in furtherance of said conspiracy by Defendant Kelly warning Plaintiff to permanate his citizen's speech and forego any future appeals.

467.   As a further overt act in furtherance of the July, 2017 conspiracy,

Defendant Kelly attempted to intimidate Plaintiff, by reminding Plaintiff of the fate of another administrator Jose Rosado, Sr. who spoke out against Defendant School District, was reprimanded and disciplined and as a result could not find suitable, comparable employment as an administrator outside of Defendant School District.

468.    Defendant Kelly took another overt act in furtherance of the aforesaid conspiracy by attempting to block Plaintiff's appeal and by refusing to provide Plaintiff with an appeal "form".

469.    An overt act in furtherance of the conspiracies entered subsequent to March 26, 2017, May 17, 2017 and July, 2017 occurred on July 27, 2017, at which time Defendant Custer issued Plaintiff a yearly evaluation containing four (4) components stating "needs improvement".

470.    An overt act in furtherance of all of the above conspiracies took occurred on February 7, 2019, at which time Defendant Custer subjected Plaintiff to professional embarrassment and humiliation by falsely accusing Plaintiff of taking no action to assist a student who had been assaulted on January 24, 2019.

471.    Defendant Custer made the aforesaid false accusation without conducting a  proper investigation, which would have revealed that on January 24, 2019, Plaintiff was away from work, recovering from surgery.

472.    Another overt act in furtherance of all of the aforesaid conspiracies occurred on March 6, 2019, at which time Defendant Custer publicly subjected Plaintiff to embarrassment and humiliation by challenging Plaintiff's actions involving a search of a student who was determined to be possession marijuana.

473.    Defendant Custer made said accusation without having conducted a proper investigation, which would have revealed that Plaintiff's actions were strictly in compliance with all procedures, protocols, mandates, motivation for subjecting the student to a search and past practice for drug searches at Harrison-Morton under the leadership of Defendant Custer.

**November, 2017 - Defendants Kruger, Kelly, Lovelidge, Brown, Custer and Edwards**

474.    In November, 2017, Defendants Kruger, Kelly, Lovelidge, Brown, Custer and Edwards, acting in combination with each other entered into an agreement or understanding among all or any of the Defendants to plot, plan or conspire to carry out the alleged chain of events and overt acts, as set forth above, thereby causing Plaintiff to suffer and sustain deprivations, injuries and special damages by imparting unwarranted and unwelcomed discipline to Plaintiff in retaliation for Plaintiff's exercising his well established First Amendment rights.

475.    On November 20, 2017, an overt act was taken by Defendant Kruger and the other individually named Defendants by illegally subjecting Plaintiff to a three (3) day unpaid suspension as a direct retaliation and punishment resulting from Plaintiff's citizen's speech on behalf of Mr. Mercado.

476.    A second overt act in furtherance of said conspiracy was taken by Defendants Edwards, Kruger, Kelly and Custer who attempted to block Plaintiff's appeal of his unlawful, unwarranted, unpaid three (3) day suspension.

477.    Overt acts in furtherance of the conspiracy occurred during the period from November, 2017 through April, 2018, at which time Defendants Edwards, Kruger, Kelly and Custer wrongfully, illegally and continuously denied Plaintiff access to his permanent, professional-personnel file in order to block or preclude Plaintiff from perfecting an appeal of his

illegal, unpaid three (3) day suspension.

478.   Another overt act in furtherance of all of the aforesaid conspiracies occurred on March 6, 2019, at which time Defendant Custer publicly subjected Plaintiff to embarrassment and humiliation by challenging Plaintiff's actions involving a search of a student who was determined to be possession marijuana.

479.   Defendant Custer made said accusation without having conducted a proper investigation, which would have revealed that Plaintiff's actions were strictly in compliance with all procedures, protocols, mandates, motivation for subjecting the student to a search and past practice for drug searches at Harrison-Morton under the leadership of Defendant Custer.

**April, 2018 - Defendants Parker, Kruger, Kelly, Lovelidge, Brown Custer and Edwards**

480.    In April, 2018, Defendants Parker, Kruger, Kelly, Lovelidge, Brown, Custer and Edwards, acting in combination with each other entered an agreement or understanding among all or between any of the Defendants to plot, plan or conspire to carry out the alleged chain of events and overt acts, as set forth above, thereby causing Plaintiff to suffer and sustain deprivations, injuries and special damages by acting to impart unwarranted and unwelcomed discipline to Plaintiff in retaliation for Plaintiff's exercising his well established First Amendment rights.

481.   An overt act in furtherance of the aforesaid conspiracy was taken by Defendant Parker who accepted, adopted and participated in Defendants precluding Plaintiff from having access to his professional-personnel file by blocking Plaintiff's attempt to appeal the illegal, unwarranted, unwelcome discipline by Defendants including the blocking of Plaintiff's appeal from his illegal, unwarranted, unpaid three (3) day suspension.

**January/February, 2020 - Defendants Brown, Pidgeon and Hahn**

482.    Defendant Hahn advised Defendant Brown concerning the incident between Plaintiff and M. O. on December 10, 2019.

483.    Defendants Brown, Pidgeon and Hahn, acting in combination with each other entered an agreement or understanding among all or between any of the Defendants to plot, plan or conspire to carry out the alleged chain of events and overt acts, as set forth above, thereby causing Plaintiff to suffer and sustain deprivations, injuries and special damages by acting to impart unwarranted and unwelcomed discipline to Plaintiff in retaliation for Plaintiff's exercising his well established First Amendment rights.

484.    After being contacted by Defendant Hahn and entering into the above conspiracy with Defendants Hahn and Pidgeon, Defendant Brown, in a memo, ordered Defendant Hahn to refer his investigation to Defendant Pidgeon in order to set in motion termination proceedings against Plaintiff.

485.    In response to the directive given by Defendant Brown, Defendant Hahn contacted Defendant Pidgeon and as a result, termination proceedings were set into motion.

486.    Defendant Pidgeon scheduled a *Loudermill* hearing for January 9, 2020.

487.    In order to comply with Defendant Brown's directive, Defendant Pidgeon initiated false, exaggerated and unwarranted charges against Plaintiff, including the false charge that he **"willfully interfered and hindered an ongoing investigation"** and further alleged that he caused serious bodily injuries, requiring medical treatment to a seven year old student.

488.    At the *Loudermill* hearing, neither Defendant Hahn nor any representative of the School District could provide a scintilla of evidence that Plaintiff had attempted to or had

interfered with the investigation.

489.     The testimony at the *Loudermill* hearing further confirmed that Plaintiff had not violated any **"accepted or recognized techniques of restraint"** and that he had made numerous attempts to de-escalate M.O.'s behavior.

490.     Notwithstanding the failure of Defendant School District, at the *Loudermill* Hearing, to provide any credible evidence of improper conduct by Plaintiff which justified termination, Defendants Hahn and Pidgeon, at the direction of Defendant Brown, moved for a termination hearing before the Board of School Directors for Defendant School District.

491.     At all times relevant to the within action, Defendant School District acquiesced to, condoned, adopted and participated in the unlawful conduct of Defendants Parker, Kruger, Kelly, Lovelidge, Brown, Custer, Edwards, Pidgeon and Hahn and its supervisory/ management level personnel.

WHEREFORE, Plaintiff Joseph A. LiCausi respectfully requests that this Honorable Court enter judgment in favor of the Plaintiff and against Defendants, jointly and severally and determine that the Plaintiff has suffered the substantial and continuing injuries set forth above and that said injuries resulted from the deprivation of his civil and constitutional rights, discrimination and other wrongful conduct by Defendants and award Plaintiff the following relief:

A.     A declaration that Defendants have violated Plaintiff's civil rights;

B.     Compensatory damages in excess of One Hundred Fifty Thousand ($ 150,000.00) Dollars;

C.     Punitive damages, as appropriate, against the individually named Defendants in their individual capacities;

D.     Exemplary damages, as applicable;

E.     Removal of all reprimands, unsatisfactory evaluations, letters of discipline and any all documents containing unwelcomed, unwarranted and adverse accusations against Plaintiff during the period from October, 2016 until the present;

F.     Reinstatement of all yearly evaluations of Plaintiff to a "satisfactory" or overall "proficient rating";

G.     Authorization of Plaintiff's transfer to a Social Studies classroom as previously requested, in writing, by Plaintiff;

H.     Offering Plaintiff the next opening for the position of high school principal within the Defendant School District;

I.     Injunctive relief, including entering an Order enjoining Defendants, and all supervisory and management level employees of the Defendant School District from engaging in further violations of the right to freedom of speech and to petition the government for the redress of grievances and the right to procedural and substantive due process and directing that they undertake a remedial program to provide regular and periodic training to their employees concerning the mandates of the First and Fourteenth Amendments to the United States Constitution;

J.     Attorney's fees, costs of suit and pre-judgment interest; and

K.     Such other equitable relief as this Honorable Court should deem just and proper.

## COUNT V
## PLAINTIFF VS. DEFENDANT SCHOOL DISTRICT
## 42 U.S.C. § 1983 - MUNICIPAL/*MONELL* LIABILITY

492.   Plaintiff incorporates Paragraphs 1 through 491 above as though the same were more fully set forth at length herein.

493.   At all times relevant to the within action, Defendant has developed and maintained official policies and customs of retaliating against employees who engage in constitutionally protected activity and to exercise their First Amendment right to free speech and to petition the government for the redress of grievances.

494.    Defendants' aforesaid official policies and customs of violating their employees rights resulted in the violation of Plaintiff's Fourteenth Amendment right to due process, Plaintiff's liberty interest in his name and reputation, Plaintiff's ability to pursue his chosen profession within Defendant School District and other school districts and Plaintiff's right to income forfeited by the illegal and improper three (3) day suspensions without pay and Plaintiff's loss of his unused sick days and unused vacation benefits.

495.    Defendant School District, by and through Defendant Kelly, warned Plaintiff to stop speaking out about safety issues, not to seek legal counsel and not to appeal Defendants' discipline, reprimands or warnings or he would face the same fate as Jose Rosado who was terminated by Defendant School District and could not find suitable or comparable professional employment outside of Defendant School District.

496.    Defendant Kelly's statements were pursuant to Defendant School District's custom, practice and policy of retaliating against employees who engage in speech as a citizen on matters of public concern and or filed petitions, grievances appeals and/or complaints of discrimination.

497.    Defendant School District's additional acts of discrimination, by and through its supervisory/management level employees are set forth in Plaintiff's *Monell* Case Statement which is attached hereto as Exhibit "A".

498.    Defendant School District, by and through its supervisory/management level employees has acted pursuant to said policy and custom and engaged in the constitutional deprivations more fully described above.

499.    Defendant School District developed or maintained policies or customs

exhibiting deliberate indifference to the constitutional rights of its employees, including

employees' rights to speak as a citizen on matters of public concern, to petition the government for

the redress of grievances and to due process rights protected by the Fourteenth Amendment.

500.    Defendant School District developed or maintained policies or customs

exhibiting deliberate indifference to unjust, unlawful and retaliatory practices by its supervisory/

management level employees, wherein employees, such as Plaintiff, were retaliated against for

exercising their First Amendment rights to citizen's speech on maters of public concern, to petition

the government for redress of grievances and deprived of their Fourteenth Amendment right to due

process.

501.    It was the policy and custom of the Defendant School District  to encourage

or permit inadequate interviewing and screening measures for its supervisory or management level

agents or employees.

502.    Defendant School District  failed or refused to mandate the appropriate in-

service training or discipline for its supervisory or management level agents or employees who

were responsible for protecting the civil and constitutional rights of its employees.

503.    Defendant School District has maintained inadequate and defective policies,

customs and practices in the hiring of its policymakers, decisionmakers and supervisory/

management level employees concerning the constitutional rights of Defendant School District's

employees.

504.    Defendant School District has maintained inadequate and defective policies,

customs and practices of training its supervisory/management level employees concerning the

constitutionally protected rights of its employees.

505.    Defendant School District failed to adopt policies which were necessary to avoid or prohibit misconduct, civil and constitutional rights violations as set forth herein.

506.    As a result of the defective and inadequate policies and customs described above and the failure to conduct proper screening, interviewing, training, re-training and failure to adopt the necessary and appropriate disciplinary policies, Defendants supervisory/management level employees, including Defendants Brown, Custer, Lovelidge, Kelly, Kruger, Edwards, Parker, Pidgeon and Hahn, believed that their actions would not be properly monitored and that their acts of misconduct would not be investigated or sanctioned, but rather would be tolerated.

507.    As a result of the existing policies and customs of the Defendant School District and the wrongful and unconstitutional conduct of its supervisory/management level employees, individuals such as Plaintiff have been subject to civil and constitutional rights violations.

508.    Defendant School District has adopted, participated in, condoned and acquiesced to the above-described wrongful and unconstitutional conduct of its supervisory/ management level employees and including Defendants Brown, Custer, Lovelidge, Kelly, Kruger, Edwards, Parker, Pidgeon and Hahn.

509.    The Defendant School District's adopting and maintaining the above-described defective and inadequate policies and customs and its failure and refusal to adopt the necessary policies demonstrated a conscious and deliberate indifference and disregard for the well-being and constitutional rights of its employees, including Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in favor of the Plaintiff and against the Defendant School District and determine

that the Plaintiff has suffered the substantial and continuing injuries set forth above and that said

injuries resulted from the deprivation of his civil and constitutional rights, discrimination and other

wrongful conduct by Defendants and award Plaintiff the following relief:

A.    A declaration that Defendant has violated Plaintiff's civil rights;

B.    Compensatory damages in excess of One Hundred Fifty Thousand
      ($ 150,000.00) Dollars;

C.    Exemplary damages, as applicable;

D.    Injunctive relief, including entering an Order enjoining Defendant,
      and all supervisory and management level employees of the Defendant
      School District from engaging in further violations of the right to freedom of
      speech and to petition the government for the redress of grievances and the
      right to procedural and substantive due process and equal protection of the
      law and directing that they undertake a remedial program to provide regular
      and periodic training to their employees concerning the mandates of the First
      and Fourteenth Amendments to the United States Constitution;

E.    Attorney's fees, costs of suit and pre-judgment interest; and

F.    Such other equitable relief as this Honorable Court should deem just and
      proper.

### COUNT VI
### SUPPLEMENTAL STATE LAW CLAIM - INTENTIONAL INFLICTION
### OF EMOTIONAL DISTRESS
### PLAINTIFF  VS. DEFENDANT PIDGEON

510.    Plaintiff hereby incorporates by reference the allegations in Paragraphs 1-

509 as though the same were more fully set forth at length herein.

511.    Defendant Pidgeon acting in his individual capacity, engaged in retaliatory

conduct against Plaintiff and said conduct was extreme and outrageous and intended to inflict

emotional distress, psychological trauma, psychic pain and suffering upon Plaintiff.

512.    Defendant Pidgeon wrongfully attempted to block Plaintiff 's receiving

unemployment benefits, stripped Plaintiff of his medical/health benefits, including his mandated Cobra benefits and caused Plaintiff financial hardship concerning the payment of his medical bills and the medical bills of his wife and minor child.

513.    Defendant Pidgeon has further wrongfully caused Plaintiff emotional distress by, without justification, adding to Plaintiff's financial burdens by refusing to compensate Plaintiff for his accrued vacation and unused sick days.

514.    Defendant Pidgeon's above-described extreme and outrageous conduct caused physical harm to Plaintiff in the nature of loss of weight, sleeplessness, headaches and depression.

515.    As a result of Defendant Pidgeon's extreme and outrageous conduct, Plaintiff has been forced to seek medical attention and has been prescribed the anti-depressant medications Wellbutrin and Xanax.

516.    The aforesaid extreme and outrageous conduct, acts or omissions of Defendant Pidgeon were calculated, designed and intended to intentionally inflict deliberate emotional distress, psychological trauma, pain and suffering upon Plaintiff.

517.    Defendant Pidgeon engaged in said conduct with intent to instill an immediate and permanent sense of fear in Plaintiff's mind.

518.    As a direct and proximate cause of the actions and/or omissions of the Defendant Pidgeon, Plaintiff suffered, continues to suffer, and may suffer indefinitely n the future extreme emotional distress, trauma, fear, anxiety, embarrassment, pecuniary loss, loss of life's enjoyments and resulting physical pain, all to his great detriment.

519.    The cause of action against Defendant Pidgeon for the tort of intentional

infliction of emotional distress is recognized under the laws of the Commonwealth of Pennsylvania and by the Pennsylvania courts.

520.    The actions of Defendant Pidgeon against Plaintiff constituted knowing, deliberate and outrageous conduct and said actions directly and proximately caused Plaintiff to suffer emotional distress.

521.    Defendant Pidgeon's actions were a direct retaliation against Plaintiff for Defendant Pidgeon's mistaken belief that Plaintiff had added Defendant Pidgeon as an additional Defendant in his federal lawsuit.

522.    Defendant Pidgeon's actions were the further result of his entering into a conspiracy with Defendants Brown and Hahn to terminate Plaintiff's employment due to Plaintiff's constitutionally protected activity.

523.    As a direct and proximate result of the actions Defendant Pidgeon, as more fully described above and the resulting extreme medical and emotional distress and physical illness, Plaintiff will incur financial expenses, medical bills and economic loss, to his great detriment and for which he is entitled to recover damages.

524.    As a direct and proximate result of the outrageous conduct, actions and omissions of Defendant Pidgeon and the resulting emotional and psychological stress and trauma, mental anguish, pain and suffering, fright, horror, grief, shame, humiliation, embarrassment, severe anger, disappointment, worry, medical expenses and economic loss, Plaintiff is entitled to punitive damages, both factually and legally against Defendant Pidgeon.

WHEREFORE, Plaintiff Joseph A. LiCausi respectfully requests that this Honorable Court enter judgment in his favor and against Defendant Pidgeon in the amount of all

damages, including compensatory damages, punitive damages, interest, injunctive relief, attorney's

fees and costs and such other relief that this Honorable Court deems just and reasonable.

## DEMAND FOR JURY TRIAL

525.    Plaintiff hereby demands a jury trial on all issues of facts and damages

in this action.

Respectfully submitted,

*/s/ Fredrick E. Charles*
Fredrick E. Charles, Esquire
Attorney I.D. Number 25691
Attorney for Plaintiff
441 Linden Street
Allentown, PA 18102
(610) 437-7064