## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH A. LICAUSI,**<br><br>*Plaintiff,*<br>v.<br><br>**ALLENTOWN SCHOOL DISTRICT,** *et al.,*<br><br>*Defendants.* | **Case No. 5:21-cv-00957-JDW** |

## MEMORANDUM

Joseph LiCausi has made broad allegations of wrongdoing within the Allentown School District. After an extended period of discovery, he has facts to support only a narrow subset of his claims. He has no evidence to support the other claims that remain in this case. His speech-based retaliation claim fails because he didn't engage in protected speech and he can't show retaliation, and his intentional infliction of emotional distress ("IIED") claim fails because he has not shown that anyone acted in a sufficiently outrageous manner to support the claim. But Mr. LiCausi has evidence to support his claim that the Defendants retaliated against him for filing a lawsuit by transferring him from a position as an Assistant Principal at a middle school to a position as an Assistant Principal at an elementary school. On that narrow claim, which Defendants did not address in their summary judgment motion, a jury will have to resolve the dispute.

I.      **BACKGROUND**

Mr. LiCausi worked for the Allentown School District for 15 years without incident, including as an administrator beginning 2011. In late 2016, Mr. LiCausi began to complain about several aspects of the District's administration. At the time, he was an Assistant Principal at Harrison-Morton Middle School. His grievances and complaints grew over the following three years. In 2019, the School District transferred Mr. LiCausi to Union Terrace Elementary School, where he worked as an Assistant Principal until the District terminated his employment on April 30, 2020.

A.      **Mr. LiCausi's Speech**

Mr. LiCausi claims he spoke as a citizen on matters of public interest, including: (1) the School District's alleged discrimination in hiring and disciplinary practices;[1] (2) Lucretia Brown's alleged failure to adhere to United States Department of Justice mandates and potential crime of disseminating child pornography; and 3) the District's alleged failure to adopt and/or enforce adequate safety policies related to students bringing weapons and drugs onto school grounds.

The record is unclear about the details of when, where, and to whom Mr. LiCausi spoke about these matters. Mr. LiCausi does not provide any specific dates or times for

---

[1] Discrimination is the factual predicate for the speech at issue, but it is not the basis for Mr. LiCausi's First Amendment claims. Therefore, I have ignored all arguments and facts regarding the existence of discrimination in the District's hiring and disciplinary practices.

his speech, though the Amended Complaint alleges that he began speaking against the District in October 2016. Mr. LiCausi makes general claims that he "spoke out to pretty much anyone that would listen. And that was speaking to school resource officers, Allentown police. Speaking out at different activities, public functions, to parents. And also to other teachers and other administrators even from other schools." (ECF No. 49-2 at 86:1-8). But the only "activities" or "functions" about which he provides any specifics are District safety committee meetings. (ECF No. 49-2 at 30:4-17.) These safety committee meetings are made up of School District administrators and an appointed parent representative; they are not open to the public.

Mr. LiCausi identifies several individuals with whom he claims to have spoken, all of whom are District or municipal employees: (1) Liayn Morris (guidance counselor at William Allen High School); (2) Laurence Harris (Allentown Police Officer and Harrison Morton School Resource Officer/SRO); (3) Matthew Geake (City of Allentown Police Officer and Raub Middle School Resource Officer/SRO); (4) Ray O'Connell (Mayor of the City of Allentown); (5) Cory Cowen (Vice-Principal of William Allen High School); (6) Jeremy Thatcher (Assistant Principal of William Allen High School); (7) John Schultz (William Allen High School Teacher); (8) Scott Cooperman (Athletic Director at William Allen High School); (9) Frank Derrick (Principal of South Mountain Middle School); (10) Bob Marrow (Assistant Principal of South Mountain Middle School); and (11) Melissa Petronio

(Assistant Principal of Raub Middle School). He does not identify any parents, journalists, or other members of the public with whom he spoke.

The record shows that District employees were aware of Mr. LiCausi's complaints through an internal "informational pipeline" between the District's teachers and administrators—in effect, internal chatter. For example, Ms. Brown testified that she was aware of Mr. LiCausi speaking against her and other members of the School District administration. In fact, Ms. Brown testified that his speech made her so fearful that she requested additional security at the central office. Mr. LiCausi also testified that Ms. Kelly warned him against speaking out based on what had happened to Jose Rosado, Sr., an administrator who the District allegedly terminated for his complaints of discrimination.

### B.     Mr. LiCausi's Petitions

Mr. LiCausi did more than just speak about his concerns. On May 18, 2018, he filed a discrimination claim against the School District with the Pennsylvania Human Relations Commission ("PHRC") and with the United States Equal Employment Opportunity Commission ("EEOC"). The Parties did not submit the substance of these administrative complaints as part of the record.

Mr. LiCausi also filed a lawsuit against the School District and most of the Individual Defendants[2] in the Eastern District of Pennsylvania on March 25, 2019. *See LiCausi v.*

---

[2] The 2019 lawsuit named the same individual defendants as this case with the exception of Anthony Pidgeon and David Hahn, who appear only in this case.

*Allentown School Dist.*, No. 5:19-cv-01258-JDW (E.D. Pa. 2019). That complaint raised many of the same issues in this suit. It addressed first amendment retaliation and IIED, as well as due process violations, defamation, and conspiracy. And, as with the present Complaint, the basis for Mr. LiCausi's First Amendment claims was speech regarding discriminatory employment practices and student safety concerns. The Parties stipulated to dismiss that suit without prejudice while Mr. LiCausi's termination proceedings were pending before the Pennsylvania Secretary of Education.

### C. Disciplinary Actions Against Mr. LiCausi

Mr. LiCausi's claims arise from two formal disciplinary actions during his employment[3] and a host of other informal alleged retaliatory actions. Mr. LiCausi's first formal disciplinary action was a written reprimand relating to a racial and gender discrimination claim that Ms. Williams, a Black teacher at Harrison-Morton Middle School, filed. The District issued a report on June 29, 2017, that concluded Ms. Williams's complaints were founded. Mr. LiCausi appealed. After an investigation, the District reissued its written reprimand, finding that Mr. LiCausi had discriminated against Ms. Williams based on race, but not gender, and that he had retaliated against her. Mr. LiCausi maintains that this reprimand was pretextual retaliation for his speech.

---

[3] My Order on Defendants' Motion To Dismiss precludes Mr. LiCausi from basing his claims on his termination.

Mr. LiCausi's second formal disciplinary action was a written reprimand and a three-day unpaid suspension for violating the District's Collective Bargaining Agreement on November 20, 2017. The District maintains that Mr. LiCausi violated the CBA by speaking to a secretary in the Central Administration Building and voicing opinions against the District's treatment of Joseph Mercado. Mr. LiCausi sought to appeal this disciplinary action but claims District employees denied him access to his personnel file and denied him the ability to appeal or participate in a name clearing hearing.

In addition to formal discipline, Mr. LiCausi complains of a litany of other alleged informal retaliatory actions. He asserts the District: (1) issued an unjustified verbal reprimand, memorialized in his personnel file on May 17, 2017, for unprofessional conduct in response to Mr. LiCausi speaking to the District Solicitor about the ambiguities in the anti-harassment policy; (2) denied his transfer requests out of Harrison-Morton Middle School throughout 2017 and 2018; (3) assigned him to a committee with the role of a teacher rather than administrator for the calendar year of 2018; (4) denied him the position of Principal of William Allen High School in June 2018; (5) gave him an inaccurate "poor, needs to improve" performance review on June 26, 2018; (6) falsely accused him of failing to prevent an assault on a student on February 27, 2019; (7) subjected him to an unjustified investigation for his handling of a student drug search and a student sexual harassment incident in March 2019; and (8) transferred him to Union Terrace Elementary School in 2019.

**D.     Mr. LiCausi's Health Insurance After His Termination**

The School District Board voted to terminate Mr. LiCausi's employment on April 30,

2020. In a letter signed by Anthony Pidgeon dated May 1, 2023, the District notified Mr.

LiCausi of his termination and said that information on continuing health insurance under

COBRA would be forthcoming. Mr. Pidgeon testified that his office sent the COBRA

information in May 2020, though Mr. LiCausi claims never to have received it. There is no

evidence in the record that Mr. Pidgeon or his office deviated from the District's standard

practices when an employee is terminated.

The District's health insurance provider, Highmark Blue Shield, informed Mr. LiCausi

that his insurance coverage ended on April 1, 2020. The record is unclear as to who at the

School District notified Highmark of Mr. LiCausi's termination or why his coverage would

have ended before his formal termination date of April 30, 2020. Because Mr. LiCausi's

health insurance coverage ended April 1, 2020, there was a lapse in his health insurance

coverage. This lapse occurred during the height of the COVID-19 pandemic.

**E.     Procedural History**

On March 1, 2021, Mr. LiCausi filed his Complaint against the Allentown School

District, Lucretia Brown, Daria Custer, Ralph Lovelidge, Kristin Kruger, Serena Edwards,

Thomas Parker, Anthony Pidgeon, Elizabeth Kelly,[4] and David Hahn. He filed an Amended

Complaint on August 27, 2021, mooting Defendants' first Motion To Dismiss For Failure

---

[4] Mr. LiCausi removed Ms. Kelly in the Amended Complaint.

To State A Claim. The Amended Complaint included six counts: (I) Section 1983 –

Retaliation For First Amendment Speech against all Defendants; (II) Section 1983 –

Retaliation For First Amendment Petition for Redress of Grievances against all Defendants;

(III) Section 1983 – Violation Of Fourteenth Amendment Procedural Due Process against

all Defendants; (IV) Section 1983 – Conspiracy against the Individual Defendants; (V)

Section 1983 – Municipal Liability against the School District;[5] and (VI) IIED against

Anthony Pidgeon. Defendants filed a second Motion To Dismiss, which I granted in part

and denied in part. I dismissed Counts III and IV in their entirety and Counts I and II to the

extent they were based on Mr. LiCausi's termination because of collateral estoppel.[6]

Discovery is now complete. Defendants filed a Motion For Summary Judgment, which is

ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter,

summary judgment "if the movant shows that there is no genuine dispute as to any

---

[5] Mr. LiCausi's municipal liability claim is duplicative of Counts I and II, as all claims cover the School District's alleged custom and failures related to First Amendment violations.

[6] Both Parties appear confused as to the claims in the Amended Complaint and that survived the Motion to Dismiss. The Complaint does **not** state a *Monell* claim for Equal Protection Clause violations. So, both Parties' arguments about a "policy, custom, or practice of 'reverse discrimination'" are irrelevant. The Complaint states a claim for IIED against Mr. Pidgeon only, not against the School District. And, based on my Order, Mr. LiCausi's termination cannot be the basis for his First Amendment retaliation claims. Therefore, Mr. LiCausi cannot rely upon facts such as his immediate termination after the Union Terrace incident to satisfy his evidentiary burden.

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

## III.   ANALYSIS

### A.   Claims Against Individual Defendants

#### 1.   First Amendment retaliation

"To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link existed between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area*

*School Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quotations omitted) (cleaned up). For a retaliatory action to deter the exercise of a constitutional right, the action must be more than *de minimis* "criticism, false accusations, or verbal reprimands." *Id.* at 758. But the threshold for deterrence is "very low." *Id.* For an employer to prevail on causation at summary judgment, the employer must "present evidence of such quality that no reasonable juror could conclude that the protected activity was the but-for cause of the [retaliatory action]." *Id.* at 759 (quotation omitted).

The Defendants argue that qualified immunity bars Mr. LiCausi's First Amendment retaliation claims against the Individual Defendants. To determine if a government official's conduct is entitled to qualified immunity, courts ask two questions: (a) whether the defendant's conduct violated a statutory or constitutional right; and (b) whether the right at issue was clearly established when the conduct took place. *See Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018). In assessing a claim of qualified immunity, like any other aspect of a summary judgment ruling, the court must not resolve genuine disputes of fact in favor of the moving party; instead, it must decide whether the facts, taken in the light most favorable to the non-moving party, take the case to a place where the law is not clearly established. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*). The first prong of qualified immunity overlaps with the merits of the liability determination, so I will assess each of Mr. LiCausi's First Amendment retaliation claims by considering the two-step qualified immunity test.

### a.     Speech

For the First Amendment to protect a public employee's speech, the employee must speak as a citizen, the speech must involve a matter of public concern, and the government must lack an adequate justification for treating the employee differently from the general public based on its needs as an employer under *Pickering* balancing. *See Baloga*, 927 F.3d at 753. "A public employee speaks as a citizen when [he] makes [his] statement outside the scope of [his] official duties." *Starnes v. Butler Cty. Ct. of Common Pleas*, 971 F.3d 416, 429 (3d Cir. 2020). The inquiry into whether an employee speaks as a citizen is "a practical one." *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009). It goes beyond the employee's formal job description and may consider "special knowledge" or "experience" that he acquired through his job. *See id.*

Mr. LiCausi has not provided any evidence from which a reasonable juror could conclude that the District imposed discipline in retaliation for any of Mr. LiCausi's protected speech. *First*, Mr. LiCausi's speech at the School District safety committee meetings was not citizen speech. Those meetings were not public, he participated in those meetings as a school administrator representative on the safety task force, and he spoke about safety policies and disciplinary procedures. He developed his perspective through his day-to-day experience as an Assistant Principal. Where he spoke, what he said, and how he acquired the knowledge to inform his speech all support the conclusion that he was speaking pursuant to his job duties as Assistant Principal.

*Second*, accepting without deciding that Mr. LiCausi's speech to fellow District administrators and teachers was citizen speech not made pursuant to his job duties, Mr. LiCausi still fails to show a First Amendment violation. The District may punish employee speech that disrupts or is likely to disrupt the workplace without violating the Constitution. *See Munroe v. Central Bucks School Dist.*, 805 F.3d 454, 472 (3d Cir. 2015). Ms. Brown testified that Mr. LiCausi's speech caused her to be so fearful of him that she requested additional security at the central office. And the District could reasonably conclude that an administrator like Mr. LiCausi rabble-rousing other administrators against District Superintendents would disrupt the District's workplace. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 389-90 (2011) (speech directed at other public employees can "interfere with the efficient and effective operation of government" by causing "a serious and detrimental effect on morale").

*Third*, Mr. LiCausi failed to show that the District knew about his speech to other municipal employees, such as Mayor O'Connell. Mr. LiCausi established that the District knew of his speech through the District's internal informational pipeline. Viewing the evidence in the light most favorable to Mr. LiCausi, I can assume that the informational pipeline would result in the powers that be at the District knowing about Mr. LiCausi's conversations with other District employees. But there's nothing in the record to suggest that the informational pipeline would provide information about Mr. LiCausi's conversations with people outside of the District, such as the Mayor or Allentown police

officers. If the District did not know about Mr. LiCausi's speech to those municipal employees, then the District could not have acted in retaliation for that speech. *See Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct.").[7]

### b.    Petition

Although Defendants lump Mr. LiCausi's petition-based retaliation claim in with his speech-based retaliation claim, they make no argument about the petition claims, nor do they make factual assertions about them in the Joint Statement Of Facts. As a result, Mr. LiCausi had no occasion to defend those claims, and I have no basis to grant summary judgment. I do note that at least one part of that claim, based on retaliation for Mr. LiCausi's filing his lawsuit in 2019, appears to have enough support to survive summary judgment.

In assessing public employees' claims of retaliation under the First Amendment's Petition Clause, courts use the same approach as under the Speech Clause. *See Borough of Duryea*, 564 U.S. at 388-89. A petition complaining of a change in an employee's duties or status, filed using an internal grievance procedure, may give rise to discipline without infringing the employee's constitutional rights. *See id.* And "[w]hen a public employee

---

[7] Because Mr. LiCausi's speech retaliation claim fails on the merits, I need not assess whether the right was clearly established such that the Individual Defendants would be protected by qualified immunity.

petitions as a citizen on a matter of public concern, the employee's First Amendment interest must be balanced against the countervailing interest of the government in the effective and efficient management of its internal affairs." *Id.* at 398. Whether an employee's petition relates to a matter of public concern depends on the content, form, and context of the petition. *See id.*

When Mr. LiCausi filed his lawsuit in 2019, he engaged in constitutionally protected conduct. *See Borough of Duryea*, 564 U.S. at 387. That lawsuit can be read to address matters of public concern. *See Montone v. City of Jersey City*, 709 F.3d 181, 193 (3d Cir. 2013). Mr. LiCausi alleges that the District transferred him to Union Terrace Elementary School in 2019, and the Third Circuit has held that retaliatory transfers could deter a person of ordinary firmness from exercising his constitutional rights. *See Baloga*, 927 F.3d at 758-59. Finally, a reasonable juror could conclude that the District acted in retaliation for Mr. LiCausi's lawsuit because the transfer came at the end of the school year after Mr. LiCausi filed his lawsuit, which may be suggestive of retaliation, especially given that the District denied his requests for transfers in the past. Furthermore, Mr. LiCausi viewed his transfer from a middle school to an elementary school as a demotion.

Separately, qualified immunity does not apply. The Third Circuit has said that retaliatory transfers were illegal as of at least 1982. *See Bennis v. Gable*, 823 F.2d 723, 733 (3d Cir. 1987). Therefore, a reasonable District administrator would have known that she

could not transfer Mr. LiCausi to Union Terrace Elementary in response to his federal lawsuit.

This analysis is necessarily cursory because Defendants did not make specific arguments about Mr. LiCausi's petition-based retaliation claim in their brief. As a result, neither Mr. LiCausi nor I have a basis to parse which Defendant might have engaged in retaliatory conduct. Because the claim has facial merit and Defendants did not target any arguments to it, I will let it proceed to a jury.

### 2. IIED

A claim of IIED requires evidence of "intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff. In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005) (quotation omitted). The conduct must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Id.* (same). "[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Id.* at 1231 (same).

Mr. LiCausi has not shown that Mr. Pidgeon's conduct was outrageous. Mr. Pidegon sent Mr. LiCausi the notification of his formal termination, which included his right to continued healthcare coverage under COBRA. Mr. Pidgeon testified that he did not notify

Highmark Blue Shield to terminate Plaintiff's healthcare benefits. Mr. Pidgeon also testified that he corroborated with his office that they sent information on COBRA benefits to Mr. LiCausi in May 2020. At most, Mr. LiCausi showed that Mr. Pidgeon was not diligent in efforts to ensure that Mr. LiCausi was able to maintain his coverage under COBRA. Failure to follow-up on health insurance paperwork, even during a global pandemic, is not "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Swisher*, 868 A.2d at 1230. Therefore, I will grant summary judgment on this claim.

**B.    Claims Against The District**

A plaintiff that pursues a claim of municipal liability under Section 1983 may proceed in two ways. He may "put forth that an unconstitutional policy or custom of the municipality led to his . . . injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (cleaned up). The two avenues "remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Id.* at 106.

Mr. LiCausi asserts both policy-or-custom and failure-to claims in his Amended Complaint. The Complaint alleges that the School District "maintained official policies and customs of retaliating against employees who engage in constitutionally protected activity and to exercise their First Amendment right to free speech and to petition the government for the redress of grievances" and that the School District's "failure to conduct proper screening, interviewing, training, re-training and failure to adopt the necessary and appropriate disciplinary policies" resulted in District employees violating Mr. LiCausi's constitutional rights. (ECF No. 10 ¶¶ 515, 528). The Defendants' Motion addresses only Mr. LiCausi's policy-or-custom claims, so I do not consider his failure-to claim and it will proceed to trial.

Mr. LiCausi identifies only a custom, not any official District policy, of retaliation against employees who exercise their First Amendment rights. He points to Jose Rosado, Sr., Joseph Mercado, Jackie Scott, Kim Walck, Cynthia Booher, Ralph Lovelidge, Danielle Trevora, Theresa Kemp, Amanda Reinhart, and Michael McMullin as employees negatively impacted by the District's alleged custom of First Amendment retaliation. I will not consider Mr. Mercado, Ms. Trevora, Ms. Kemp, Ms. Reinhart, or Mr. McMullin because Mr. LiCausi has provided no evidence of these individuals' complaints or the alleged retaliatory acts against them.

I also will not consider Ms. Scott, Ms. Booher, Mr. Lovelidge, or Ms. Walck because the evidence Mr. LiCausi provides is insufficient to support his claim. As to Ms. Scott, Ms.

Booher, and Mr. Lovelidge, Mr. LiCausi only shows that these individuals spoke against the District, not that they engaged in any form of petition. Mr. LiCausi cannot assert a claim based on an alleged custom of retaliation against speech when his speech retaliation claim fails on the merits. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). And as to Ms. Walck, Mr. LiCausi does not provide any evidence of the District's retaliation against Ms. Walck. He asserts that she was one of several people terminated or forced to resign because she filed a federal lawsuit. But he provides no evidence to support that assertion, such as the timing of her termination in relation to her complaint. Without more, I cannot conclude that Ms. Walck's situation is part of a practice or custom of retaliation.

That leaves only Mr. Rosado to support Mr. LiCausi's custom claim. And while the District's treatment of Mr. Rosado might be indicative of retaliation, one previous instance is not evidence of a custom "so well-settled and permanent as to virtually constitute law." *Forrest*, 930 F.3d at 105-06. Therefore, the policy-or-custom avenue of Mr. LiCausi's municipal liability claim cannot proceed.

Neither Defendants nor Mr. LiCausi addresses the failure-to prong of municipal liability. I have my doubt that Mr. LiCausi has evidence that some District policymaker acted with deliberate indifference to Mr. LiCausi's rights, but I can't say for sure. So pursuant to Fed. R. Civ. P. 56(e)(4) and (f), I will give each side an opportunity to present

argument on the issue, and I will give Mr. LiCausi an opportunity to present any evidence that he might have of deliberate indifference.

## IV.    CONCLUSION

Because Defendants did not move on Mr. LiCausi's failure-to municipal liability claims, and there is sufficient evidence to create a triable issue of fact, Mr. LiCausi's First Amendment petition retaliation claim may proceed against all Defendants. However, Mr. LiCausi has not provided sufficient evidence to support his First Amendment speech retaliation or IIED claims. Therefore, I must grant summary judgment on those counts. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

July 11, 2023